FRANK JOHNSON, TRUSTEE, vs. LEWIS E. STANTON, ADMINIS-
TRATOR, AND OTHERS.

A testator gave a fund to Z in trust, the income to be paid to the testator's widow during her life, and on her decease the whole fund to go to Z if he should survive the widow, and if he should not, to such person as Z by his last will should appoint. The will then gave all the residue of the property to Z. Z died before the testator's widow, leaving a will which gave his property to his son, but in no other manner making any appointment. Held :—

1. That the will of Z was not an execution of the power of appointment.
2. That the interest in the fund contingent upon its failure to vest either in Z or in any appointee under his will, did not fall within the residuary clause of the will.

That the fund, having failed to vest either in Z or any such appointee, became intestate estate.

·BILL in equity, brought to the superior court by the petitioner as trustee under the will of Jabez W. Huntington, praying for the advice of the court as to the construction of the will.

Jabez W. Huntington of Norwich died on the 2d day of November, 1847, leaving a will dated November 19, 1845, the material part of which was as follows :—

" I direct my executor, within a reasonable time after my decease, to invest in his own name, or in the name of such other person as he may designate, the sum of seventeen thousand dollars of my estate, in such stock, securities, loans or other form of investment as he may deem most expedient, and as his judgment and discretion may dictate, to be held by him, or the person designated by him, upon the following trusts, and for the following uses and purposes, and no other ; viz: To pay over to my beloved wife, Sally Ann, during her natural life, the dividends, interest, profits or income of said trust fund as they may fall due and be payable, the same to be for her use and at her disposal ; and upon her decease, to deliver and pay over all such stocks, securities, loans or investments, together with all dividends, interest, profit or income which may not have become due and payable at the time of the decease of my said wife, to my beloved father, Zachariah Huntington, if he shall be then alive ; but if he shall be dead at the decease of my said wife, then to deliver and pay over the same to such person or persons as my said father by his last will and testament shall designate and appoint. And I give and bequeath the whole principal of said trust fund, and the dividends, &c., not due and payable as last aforesaid upon the decease of my said wife, to my father, Zachariah Huntington, and his heirs and assigns forever, if he shall be then alive, but if he shall be dead at the decease of my said wife, I give and bequeath the same to such person or persons, and their heirs and assigns forever, as my said father by his last will and testament shall designate and appoint. * * * * I give and

bequeath all the rest and residue of my estate, &c : real and personal, which I now possess or may hereafter a quire and own at my decease, to my beloved father Zachariah Hunting-ton, to him and his heirs and assigns forever."

Zachariah Huntington was also appointed executo , which office he accepted, and invested the sum of $17,000 in accord-ance with the direction of the will, for the purposes of th trust created by it. He afterwards designated Henry Strong of Norwich to hold and manage the trust fund in his place and transferred the fund to him, and by successive appointments and transfers it had come into the hands of the petitioner and George Perkins of Norwich, who now held the same as trust-ees under the will. Zachariah Huntington died in 1850, leaving Sally Ann Huntington, the widow of Jabez W., surviv-ing, and leaving Thomas M. Huntington, who was his son, as his sole heir at law. He left a will, dated the 20th of March, 1849, by which, after making certain bequests, he gave the residue of his estate, which was of large amount, to the said Thomas M. and his children, but making no express appoint ment with regard to the fund of $17,000 given to him in trust by the will of Jabez W., and as to which he had, under that will, a power to appoint by his last will the person to whom it should be paid. Lewis Stanton Esq., of Norwich, was ap-pointed on the 10th day of July, 1861, administrator of what-ever intestate estate was left by Jabez W. Huntington, and claimed the fund of $17,000 as such intestate estate.

The petition set forth these facts, and asked the advice of the court as to the construction of the will of Jabez W. Hun-tington, and as to the effect upon the fund of the will of Zachariah Huntington; making the said Stanton, and all other persons interested, parties respondent. The case was reserved for the advice of this court.

*Halsey*, for the petitioner.

1. The general intention of the testator was, that, with the exception of a few trifling legacies, his estate should go to his father Zachariah Huntington, subject to the trust created for the benefit of the testator's widow. This appears from the

fact that he gave him this fund, held in trust for the widow for her life, if he survived her, and if he did not survive her, gave him power to dispose of it as he pleased by his will, and also made him residuary legatee. The clauses of the will relating to the trust fund are framed quite artificially, but, taken in connection with the residuary clause, they show a disposition to give the entire estate to the father subject to the trust, rather than to give him a contingent interest in this fund, with a technical power of appointment in case he did not survive the widow. No disposition is made of this fund in case his father died before his widow without disposing of it by will, other than the residuary clause. As the testator manifested a desire to make a testamentary disposition of his estate, it is to be presumed that he would have provided for this contingency, if he had any other intention respecting it.

2. The language of the residuary clause is broad enough to include this fund, even if Zachariah's interest in it was contingent. The disposition evinced by the testator to give his father the entire estate, subject to the trust for the benefit of the widow, rebuts any inference that might otherwise be drawn, that the language of the residuary clause was to be controlled by the clause relating to the trust. This construction prevents intestacy as to any of the estate, a result which will always be secured if it can be by any fair construction of a will.

*Hovey* and *Stanton*, with whom were *Foster* and *Young*, for the respondents.

1. The estate in this fund did not vest in Zachariah Huntington by the will of Jabez W. Huntington. The gift to Zachariah is not within the definition of a vested interest. An estate is vested when there is an immediate fixed right of present or future enjoyment. 1 Fearne Cont. Rem., 2. Vested remainders are where the estate is invariably fixed to remain to a determinate person after the particular estate is spent. 2 Bla. Com., 169 ; 1 Swift Dig., 96 ; 4 Kent Com., 202. The gift precisely conforms to the definition of a contingent estate. The right of enjoyment is to accrue upon an uncertain event. 1 Fearne Cont. Rem., 2 ; 2 Bla. Com., 169 ; 4 Kent Com.,

206. The ulterior gift is incompatible with the vesting in Zachariah. *Catley* v. *Vincent*, 15 Eng. L. & Eq., 140; *Farrer* v. *Barker*, id., 229; *Goodman* v. *Drury*, 13 id., 135; *Congreve* v. *Palmer*, 23 id., 165; *Denn* v. *Bagshaw*, 6 T. R., 512; *Wingrave* v. *Palgrave*, 1 P. Wms., 401; *Planner* v. *Scudamon*, 2 Bos. & Pul., 289; *Hunt* v. *Hall*, 37 Maine, 363; *Olney* v. *Hull*, 21 Pick., 311; *Emerson* v. *Cutler*, 14 id., 108. There is no general intention expressed in any part of the will, or to be collected from the whole will, to vest this fund absolutely in Zachariah. 1 Jarman on Wills, 757. 4 Kent Com., 535. The residuary clause does not carry this fund. A residuary clause in general terms will not pass property when there is a previous particular bequest of the same property inconsistent with the residuary clause. *Doe* v. *Bartle*, 5 Barn. & Ald., 492; *Simmons* v. *Rudall*, 2 Eng. L. & Eq., 97; *Allum* v. *Fryer*, 3 Ad. & El. *N. S.*, 442.

2. The will gives to Zachariah Huntington a mere power of appointment over the fund in case he should not survive the widow of the testator.

3. He did not exercise the power of appointment thus given. His will contains no execution of the power. A general devise or bequest which does not allude to the power, or to the subject of it, is no execution of the power, unless the will would otherwise be totally inoperative. 1 Sugden on Powers, 385; 4 Kent Com., 335; *Denn* v. *Roake*, 5 Barn. & Cres., 720; *Lovell* v. *Knight*, 3 Simons, 275; *Lempriere* v. *Valpy*, 5 id., 108; *Blagge* v. *Miles*, 1 Story, 426; 4 Cruise Dig., 189; 2 Story Eq. Jur., § 1002, *a*; 1 Jarman on Wills, 637.

HINMAN, C. J. The question in this cause respects the title to a fund of $17,000 which the late Judge Huntington by his will directed to be invested and held, and the income thereof paid to his widow for her use and disposal; and at her decease the principal, and all the income which had not then become due, to be paid over to his father, Zachariah Huntington, if then alive, but if dead, then to such person or persons as his father should by his last will and testament designate and appoint. Zachariah Huntington died previ-

ously to the widow of his son Jabez W., making no appointment by his will of any person to take this particular fund. It did not therefore vest in him under this clause of his son's will, because his son's widow survived him, and it did not vest in any appointee of his, because he made no appointment. Zachariah Huntington was also the residuary legatee under his son's will, and the general words of this clause are undoubtedly comprehensive enough to include any interest in the fund not previously disposed of in the will. Was this clause intended to pass any contingent interest in this fund to his father? We think he did not in that clause contemplate this fund. The general words are used for the purpose of passing the property which he had not specifically devised. It is, of course, a question of intention to be gathered from the whole will, and such general words can not be allowed materially to alter other express provisions of the will, introduced in respect to this fund when he had it under consideration. His will is very explicit and precise in respect to the disposition of this fund. He directs it to be held upon certain trusts and uses, and he expressly excludes any other. He then gives it to his father only in case of his surviving his widow, but gives him a power of appointment in the event of his not surviving her. But if the residuary clause should be held to be operative, these provisions would be wholly nugatory. The contingent interest, carefully specified, would, immediately on the taking effect of the will, become a vested interest in Zachariah ; and the power of appointment by will would be useless or nugatory, as he would have the higher power of disposing of it in any manner that he pleased ; and it might be taken for his debts. In other words, if he could be permitted to take the fund under the residuary clause, he would take it absolutely, only subject to the life estate of his son's widow in the income, whereas the precise terms in which only a contingent interest is given to him in it, with a power of appointment by will, in the event of his not surviving the widow, shows a clear intention in the testator that he should not take it absolutely. The general words of the residuary clause are therefore plainly repugnant to the special provisions in respect

to this fund.   They appear to us therefore as only intended to operate on other property.   The case of *Allum* v. *Fryer*, 3 Ad. & El. *N. S.*, 442, is very similar to this in the facts upon this point, and in that case the general words of a residuary clause of a will were held to be controlled by very similar specific provisions in respect to specific property.

We have said nothing in respect to the construction of the wills of Zachariah Huntington and Thomas M. Huntington, because from what has been said it appears that they do not in any way affect this fund.   It is proper to remark however that the will of Zachariah does not profess to be an execution of the power granted him in the will of his son Jabez W.   He does not in any part of his will refer to this power of appointment or to the subject-matter of it; and his will only professes to dispose of his own private property.   Indeed we do not understand that it is claimed that it can have any effect upon the fund, unless the court should be of opinion that he took something more than a mere power over the fund in the event of his not surviving the widow.

We therefore advise the superior court that the administrator of the intestate estate of Jabez W. Huntington is entitled to this fund, for the purpose of distribution to his legal heirs, after deducting the expenses incident to the settlement of his estate.

In this opinion the other judges concurred.