JOHN C. HOLLISTER, EXECUTOR, *vs.* REBECCA S. SHAW AND OTHERS.

To constitute the execution of a power of appointment by will, there must be a reference to the power itself or to the subject of it, unless the intention is manifest from the fact that the will would remain inoperative without the aid of the power or is so clearly demonstrated by words or acts that the transaction is not fairly susceptible of any other interpretation.

A testator gave a portion of his estate to trustees, to pay over the income to his daughter *M* during her life, and on her death to convey the same to her children if she left any, and in default of children to such person or persons and in such portions as *M* by her last will should appoint, and in default of such appointment to her heirs at law. *M* afterwards died, leaving a will and $50,000 of property of her own, giving several legacies and making a residuary bequest, but making no allusion to the trust fund nor to the power of appointment, but speaking of the property disposed of as "my estate." Her own property was more than enough to pay all her debts and to meet all the demands of the will. Held that she had not executed the power of appointment. [Two Judges dissenting.]

*M* gave the residue of her estate to her niece *R*, adding "and my will is that at the death of *R* the amount given to her shall go to her children." Held that *R* took only a life estate.

By her will she gave $1,000 to her niece *D*, and by a codicil made two years

after, among other bequests she gave $1,000 to *D.* Held to be an additional bequest.

PETITION to the Superior Court for advice as to the construction and effect of certain provisions of the wills of Elnathan Atwater and Margaret Atwater, under the former of which wills the petitioner was a trustee and of the latter executor. Facts found and case reserved for advice. The case is fully stated in the opinion.

*L. B. Morris*, for heirs of Margaret Atwater, and for Fanny A. Mix and others, legatees under her will.

*C. R. Ingersoll*, for Ruth A. Maltby.

*J. S. Beach*, for children of Ruth A. Maltby.

*H. B. Harrison*, for heirs of Margaret Atwater.

PARDEE, J. Elnathan Atwater died in 1845, leaving a will, the material portions of which are as follows:

" *Fourth.* The remainder, after the life interest of my wife, in all the estate aforesaid, I do hereby divide at the time of my death into four equal parts, which said parts I give, devise and bequeath as is particularly declared and expressed in the following articles of this will. &ast; &ast; &ast;

" *Seventh.* One of the said four parts of my estate mentioned in the fourth article of this will I give to my beloved daughter, Margaret Atwater, subject to the regulations and provisions hereinafter contained. &ast; &ast; &ast;

" *Ninth.* Each and every principal, of each and every one of the parts and proportions of my estate, given by the fifth, seventh and eighth articles of this will as aforesaid, I give, devise and bequeath to Dennis Kimberly, Isaac H. Townsend and Thomas Atwater, and the survivors and survivor of them, as joint tenants in fee-simple and forever, as a distinct fund, upon the trusts and for the purposes following—that is to say:

" Upon trust, to hold the said each and every principal, of the said each and every part and proportion of said estate, as a

trust fund, during the life of the persons to whom the said part and proportion is given as aforesaid, and to manage the said each and every principal as they shall deem expedient, and to receive and collect, from time to time, the income, interest and profits of the same, and of the avails thereof; and to pay over the net proceeds of the said income, interests and profits to the said persons annually, during his or her natural life, and in the same proportion for the part of the year which may have elapsed at the time of his or her death.

"And upon the further trust, at the death of the said person to whom the said part and proportion of estate is given as aforesaid, to convey, transfer and pay the said principal of the said bequest to the child or children of the said person, who shall be living at his or her death, in fee-simple and forever, and in equal proportions if more than one, the lineal descendants of any deceased child to stand in such child's place as representatives; and in default of such child, children and representatives then living, to such person or persons, in such parts and proportions, and for such estate and estates, as the said person by his or her last will and testament, or in any instrument in writing in the nature thereof, shall direct, limit or appoint; and in default of such direction, limitation and appointment, and so far as the same shall not extend, to the heirs at law of the said person who shall be living at his or her death, in the same manner and in the same proportions as the same would have descended and been distributed to them according to the present statute of distributions of the state of Connecticut, if the said person had owned the same as his or her proper estate at the time of his or her death, and had died intestate and solvent."

Margaret Atwater died on the 3d day of January, 1878, unmarried, leaving no child or children, but leaving a will. the material portions of which are hereinafter recited.

The petitioner, as trustee under the will of Elnathan Atwater, and as executor under the will of Margaret Atwater, alleges that under the provisions of the ninth article of the will of Elnathan Atwater various questions have arisen and various claims have been made by the heirs at law and

residuary legatee under the will of Margaret Atwater, as to the meaning and effect of her will upon that part of the trust estate of Elnathan Atwater held in trust for her, and that among other questions which have arisen are the following:

*First.* Whether Margaret Atwater in her will exercised the power of appointment provided for in the will of Elnathan Atwater, over that part of the trust estate held in trust for her.

*Second.* Whether the heirs at law of Margaret Atwater are entitled to receive by distribution that part of the trust estate of Elnathan Atwater held in trust for her, notwithstanding her will devising her estate to Ruth A. Maltby as residuary legatee.

*Third.* Whether the petitioner, as trustee of that part of Elnathan Atwater's trust estate held in trust for Margaret Atwater, holds the same since her death in trust to convey to her heirs at law or in trust to convey to Ruth A. Maltby, the residuary legatee in her will.

*Fourth.* Whether Elnathan Atwater by his will devised any estate to either of the four persons named therein, which they or either of them could dispose of by will without specifically directing, limiting and appointing what estate was so disposed of, as well as the person to whom it was so devised.

*Fifth.* Whether Elnathan Atwater, by his will, devised any estate to either of the *cestuis que trust* therein, except a bare power of appointment.

*Sixth.* Whether Margaret Atwater, by her will, devised to Ruth A. Maltby an estate in fee or a life estate.

The petitioner also represents that questions have arisen and claims been made in regard to certain legacies left by Margaret Atwater in her will, so that he is unable with safety to himself or the rights of others to pay the legacies without the advice of the court; which questions are: Whether Margaret Atwater in her will gave to Margaret A. Dunlap a legacy of $1,000, and a further legacy of $1,000 in the codicil to the will, or whether the sums of $1,000, named both in the will and codicil, are to be construed as only a

legacy of $1,000; and whether in her will she left to Fanny A. Mix a legacy of $1,000, and an additional legacy of $1,000 in the codicil, or whether said sums of $1,000, named both in the will and codicil, are to be construed as only a legacy of $1,000.

The petitioner therefore asked the Superior Court to adjudge and determine the various questions aforesaid, and the legal construction of the wills and codicil, and give him such advice as would enable him to execute his several trusts properly and with safety to himself. The Superior Court has asked this court to determine what advice shall be given to the petitioner.

*First.* It is evident that the will of Elnathan Atwater was drawn with care and skill; indeed it is framed of language so apt and precise as to leave little ground for dispute or doubt as to the construction to be placed upon it. The testator gave the estate in fee to trustees to be held during the life of his daughter Margaret, paying to her the income annually; upon her death they are to convey it to her children; in default of these, to such persons as she, in the exercise of the power given her, should nominate in her will; in default of these, to her heirs at law. Thus the testator makes the estate to pass directly from himself to her children, nominees or heirs at law, as the case may be, never having vested in her; she having only the right to the income for life, with a possible power of diversion by appointment. There is no expression in the will indicative of an intention to clothe her with the right to dispose of the principal otherwise than by the exercise of the special power; and the gift of this power seems to suggest that the testator did not suppose that he had previously given her an absolute estate.

*Second.* In respect to the execution of a power of appointment by will, we may state the law to be that there must be a reference to the power itself or to the subject of it, unless the intention to execute is manifest from the fact that the will would remain inoperative without the aid of the power, or is so clearly demonstrated by words or acts as that the transaction is not fairly susceptible of any other interpreta-

tion.   4 Kent's Com., (5th ed.,) 334, 5; 2 Jarman on Wills, (4th ed. Perkins's Notes,) 554, and cases there cited; *Blagge* v. *Miles*, 1 Story, 426; *Bingham's Appeal*, 64 Penn. S. R., 345.

In *Johnson* v. *Stanton*, 30 Conn., 297, Jabez W. Huntington by will directed $17,000 to be invested and held, and the income thereof to be paid to his widow for her use and disposal; at her decease the principal to be paid to his father, Zachariah Huntington, if then living, if not, to such person as the father should by will appoint.   The father died before the widow, leaving a will, but making no express appointment with regard to the fund.   The court held that the power was not exercised, saying, "It is proper to remark however that the will of Zachariah does not profess to be an execution of the power granted him in the will of his son Jabez W.   He does not in any part of his will refer to this power of appointment or to the subject matter of it; and his will only professes to dispose of his own private property." That will contained no reference to the power or the subject of it; the court could find no word, no act, no circumstance indicative of an intent to dispose of any other than the testator's own property, and upon that all claims of the will could operate.   Herein the court practically affirmed the rule as stated.

In times somewhat remote the English courts so rigidly enforced the rule that the will should refer either to the power or the subject of it as consciously and confessedly to sacrifice the testator's clearly manifested intent.   For instance, it has been held that the bequest of a sum of money corresponding to that which is the subject of the power, raises no inference that the testator intended to exercise the power, although when he made his will he was not possessed of any other property affording a fund for payment.   *Jones* v. *Tucker*, 2 Merivale, 533.

At length Parliament interfered, and by the Statute of Wills, 7th William IV, and 1st Victoria, ch. 26, sec. 27, (1837,) declared that a general devise of real or personal estate shall operate as an execution of a power in the testator over the

same, unless a contrary intention shall appear in the will; thus reversing the common law presumption. In 1831 the legislature of New York had done the same thing so far forth as powers concerned real estate, and in *White* v. *Hicks*, 33 N. York, 383, (1865,) the court applied the principle to personal estate.

The case of *Johnson* v. *Stanton*, supra, was decided in 1861, with knowlege that Judge Story had twenty years before, in a note to *Blagge* v. *Miles*, supra, placed the stamp of his approval upon the principle embodied in the English statute, in saying that " the doctrine therefore has at last settled down in that country to what would seem to be the dictate of common sense, unaffected by technical niceties."

In *Amory* v. *Meredith*, 7 Allen, 397, the testatrix being in feeble health conveyed all her real and personal estate to trustees, upon trust to manage the property and pay the income to her during life, to reconvey to her when she and they should think it expedient to terminate the trust, or upon her decease to convey it to such persons as she should by her last will designate, or upon her death intestate to her heirs at law. She afterwards inherited a small amount of real and personal estate which was not included in the trust and the trust was not terminated during her life. By her will she gave and devised one-half of all the estate, real, personal and mixed, of which she should die seized or possessed, to trustees, for the benefit of the family of a brother; one-tenth in trust for a sister and her children; and the residue of her estate to four brothers and sisters named in the will; and the question was, whether the real and personal estate embraced in the deed of trust passed under the will. In deciding that it did the court said: " We are aware of no decision in this commonwealth, binding on us as an authority, which should compel us to adopt a rule of construction likely in a majority of cases to defeat the intention it is designed to ascertain and effectuate. Seeking for the intention of the testator, the rule of the English statute appears to us the wiser and the safer rule ; certainly when applied to cases like the one now under consideration, where the testatrix was dealing with property

which had been her own, and of which she had the beneficial use as well as the power of disposal." Herein the court in Massachusetts, free from the influence of any previous decision of their own, having before them a case in which, most manifestly, the testator's intention would be effectuated by the English statutory rule, approved and applied it. This decision was followed in *Willard* v. *Ware*, 10 Allen, 263, and *Bangs* v. *Wilson*, 98 Mass., 270.

It is believed that with us instances of powers of appointment by will are not numerous; the attention of the court has rarely been called to them; but in the case of *Johnson* v. *Stanton*, supra, the rule was enforced without protest; and under it, presumably, testamentary intentions will as often be carried out as under any effort, judicial or legislative, to apply a fixed rule to all cases of interpretation of wills. The courts of England waited for Parliament, and those of New York for the legislature, to precede them in reversing the common law presumptions, and we think it proper to allow the legislature to change the rule for this state.

As we have said, Margaret Atwater had the income from one-fourth part of her father's estate for life, with power of appointment over it by will; and at her death she was the absolute owner of other estate valued at about $50,000, of which a large share would remain after the payment of debts and legacies. By her will, after sundry bequests, she devised and bequeathed to Ruth A. Maltby all the " rest and residue of my estate," real, personal and mixed. Upon this estate of her own every clause of her will can exhaust itself. There is no reference either to the power, or to the whole or any specific portion of the property subjected to it. We are not permitted to declare that power and property are synonymous terms, and therefore cannot say that the expression " my estate " of its own force includes the subject of the power. As she never had the right of property in the subject, we cannot say that the use of the expression " my estate " makes her intention to include the subject so clear and manifest that the will is not fairly susceptible of another interpretation. So far forth as her own property is concerned, she certainly

preferred Mrs. Maltby; but, it may well be that in her intent the limit of that property is the limit of the preference.

*Third.* Margaret Atwater, after sundry bequests, gave the residue of her estate to Ruth A. Maltby, qualifying the gift by the following words: "And my will is that at the death of said Ruth A. Maltby the amount given to her shall go to her child, or in case she leaves more than one, then it shall go to the surviving children in equal proportions." It is contended in behalf of Mrs. Maltby that she takes an absolute estate; in behalf of her children that she takes a life estate only.

Of course it is the duty of courts in interpreting wills to discover the intention of the testator; in doing this they have not permitted themselves to be fettered by fixed rules of construction; and, as many wills are framed by persons unskilled in the use of technical phrases, there has been an indulgence extended to testators in the use of language which is withheld from grantors by deed. Courts are compelled to study the plan of each will by itself; and it may happen that the same court, upon such study, will for sufficient reasons reach in different cases differing results upon language seemingly quite the same in meaning; and the conclusion reached in the case of one will may furnish little or no aid in interpreting another. Determinations in testamentary cases are therefore not always to be fully accepted as precedents. In the present case the testatrix plainly requires that the principal of the gift to the mother's use shall all go to the children; thus barring the supposition that she can diminish or divert it, or have anything beyond the income of it. The estate which she is to take is described in one sentence; it is not an instance of an absolute gift in one clause and of a possible qualification in a subsequent one; the paragraph is the clear description of a life estate at the outset, once for all, with no return to or subsequent mention of it; and no other clause in will or codicil seems to affect it. The court has no occasion to recast the statement; it is clear, consistent and operative as a whole as it is framed; and, if we were to depart from the plain meaning of plain language and go upon the sea of conjecture, perhaps there is as much reason for believ-

ing that the testatrix did not intend that the mother should consume the gift in the using, but did intend to make a sure provision for the children, as the contrary.

*Fourth.* In the will there are bequests of $1,000 each to Margaret A. Dunlap and Fanny A. Mix; in the codicil there are bequests of $1,000 each to the same persons; we are asked whether, under the will and codicil, each of these legatees is entitled to $1,000 or $2,000.

Each of these clauses, of itself, constitutes a perfect bequest of a specific sum of money; nothing in the last suggests that it is in repetition of or in substitution for the first; each stands well with the other. The testatrix allowed both to stand, and the court can see no reason for declaring either to be inoperative.

We therefore advise the Superior Court that Margaret Atwater in her last will and testament did not exercise the power of appointment provided for in the will of Elnathan Atwater, over that part of the trust estate held in trust for her, and that her heirs are entitled to receive the same by distribution; that Margaret Atwater by her will devised a life estate to Ruth A. Maltby; and that Margaret Atwater by her will and the codicil bequeathed $2,000 to Margaret A. Dunlap and a like sum to Fanny A. Mix.

In this opinion CARPENTER and LOOMIS, JS., concurred; PARK, C. J., and GRANGER, J., dissented as to the testatrix not having executed the power, but concurred as to all other points.