GEORGE E. MALTBY AND OTHERS' APPEAL FROM PROBATE.

A testator gave a portion of his estate to his daughter M, to be held by trustees, who were to pay over the income to her during her life and on her death to convey the property to her children if she left any, and in default of children to such person or persons as she by her last will should appoint, and in default of such appointment to her heirs at law who should be living at her death, in the same manner and in the same proportions as the same would have been distributed to them "under the present statute of distributions" if she had owned the same as her proper estate and had died intestate. Held that M took only a life estate.

The provision that in default of children and of an appointment by her will the property should go to her heirs under the then existing statute of distributions, prevented its going to her heirs under any statute, variant from the then existing one, that might be in existence at the time of her death, and made the persons taking the property take as devisees and legatees of the testator and not as heirs of M.

If there had been no disposition of the property in default of children *M* might have been held to have taken an absolute estate.

Where, upon the petition of an executor to the Superior Court for advice as to the construction of a will, all parties interested having been brought in as respondents, this court upon a reservation of the case for advice has given an opinion upon the questions involved, it will not, except at its discretion, consider the same questions again where they arise upon a probate appeal between parties who were respondents in the former case.

The nature of a decree upon a petition for advice, and whether it operates as an estoppel upon the parties, discussed in the argument, but not decided.

APPEAL from the decree of a court of probate, ordering a distribution of the testate estate of Elnathan Atwater, deceased; taken to the Superior Court in New Haven County. The ground of the appeal was the error of the probate court in its construction of the will. This court had advised with regard to the construction of this will upon the petition of a trustee under it to the Superior Court for advice, (*Hollister v. Shaw and others*, 46 Conn., 248,) and the judgment of the Superior Court in accordance with that advice was now pleaded by the appellees in bar of the present appeal, to which plea the appellants demurred. The reasons of 'appeal as set forth in the opinion present substantially the same questions of law as were presented by the petition of the trustee.

Elnathan Atwater died in 1845, leaving the will in question, the part of which material to the present case is as follows:

"*Fourth.* The remainder, after the life interest of my wife, in all the estate aforesaid, I do hereby divide, at the time of my death, into four equal parts, which said parts I give, devise and bequeath, as is particularly declared and expressed in the following articles of this will."

"*Seventh.* One of the said four parts of my estate, mentioned in the fourth article of this will, I give to my beloved daughter, Margaret Atwater, subject to the regulations and provisions hereinafter contained."

"*Ninth.* Each and every principal, of each and every one of the parts and proportions of my estate, given by the fifth, seventh, and eighth articles of this will, as aforesaid, I give, devise and bequeath to Dennis Kimberly, Isaac H. Townsend, and Thomas Atwater, and the survivors and survivor of them, as joint tenants in fee-simple and forever, as a distinct fund,

upon the trusts and for the purposes following—that is to say: Upon trust to hold the said each and every principal, of the said each and every part and proportion of the estate, as a trust fund during the life of the persons to whom the said part and proportion is given as aforesaid, and to manage the said each and every principal as they shall deem expedient, and to receive and collect, from time to time, the income, interest and profits of the same, and of the avails thereof; and to pay over the net proceeds of the said income, interest and profits, to the said persons annually, during his or her natural life, and in the same proportion for the part of the year which may have elapsed at the time of his or her death. And upon the further trust, at the death of the said person to whom the said part and proportion of estate is given as aforesaid, to convey, transfer and pay the said principal of the said bequest to the child or children of the said person, who shall be living at his or her death, in fee-simple and forever, and in equal proportions if more than one, the lineal descendants of any deceased child to stand in such child's place as representatives; and in default of such child, children and representatives then living, to such person or persons, in such parts and proportions, and for such estate and estates, as the said person by his or her last will and testament, or in any instrument in writing in the nature thereof, shall direct, limit or appoint, and in default of such direction, limitation and appointment, and so far as the same shall not extend, to the heirs at law of the said person, who shall be living at his or her death, in the same manner and in the same proportions as the same would have descended and been distributed to them, according to the present statute of distributions of the state of Connecticut, if the said person had owned the same as his or her proper estate, at the time of his or her death, and had died intestate and solvent. And if the said person shall die before my death, the said principal of the said bequest I give, devise and bequeath to the heirs at law of the said person who shall be living at the time of my death, according to the present statute of distributions of the state of Connecticut for solvent estates."

The fifth, sixth and eighth articles of the will gave the other three of the four portions to another daughter, a son, and the representatives of a deceased daughter, in the same terms in which the share of Margaret Atwater is given to her by the fourth article.

Margaret Atwater died on the 3d of January, 1878, leaving on children. She left a will by which she gave all her property, after the payment of certain legacies, to Ruth Maltby, the principal appellant, but (by the decision of this court, 46 Conn., 248,) failed to execute her power of appointment under the will of Elnathan Atwater, her father.

The Superior Court reserved the case, upon the demurrer to the appellees' plea in bar, for the advice of this court.

*C. R. Ingersoll* and *J. K. Beach*, with whom was *J. S. Beach*, in support of the demurrer.

*First.* The order of the Superior Court, pursuant to the advice of the Supreme Court of Errors, was not, in a proper legal sense, a judgment. It was an advisory direction to Mr. Hollister, for his personal guidance and protection in the discharge of his executorship, granted upon his petition for that purpose, as a matter of favor and not of right, resting in the discretion of the court, and subject to be varied or reconsidered as that discretion might dictate or the petitioner's position might require. It could neither control the probate court in the settlement of Elnathan Atwater's estate, of which that court already had jurisdiction, nor these appellants when aggrieved by any order of the probate court in its exercise of such jurisdiction. A legal judgment which cannot be enforced is a solecism. And the Superior Court had no power as a court of equity to compel any action by the probate court in its settlement of the estate of Elnathan Atwater, or even to control the administrator in his action, when under the jurisdiction of the probate court. The advisory direction which it might give Mr. Hollister, as to the law affecting his duties upon certain submitted statements of fact, could not be enforced by any process of the Superior Court, either against the probate court, as an inferior court, or the parties within

its jurisdiction.   The jurisdicion of the Superior Court in the settlement of estates is a statutory jurisdiction, and solely as an *appellate* probate court.   The practice which has of late years obtained in Connecticut with executors and trustees of applying to the Superior Court, as a court of equity, for advice in questions growing out of the construction of wills, was undoubtedly suggested by the practice of the English court of chancery in suits for a like purpose.   But there is a radical difference in this respect between the powers of our own chancery courts and those of England.   There the Court of Chancery has full jurisdiction over the administration of the estates of deceased persons.   3 Wms. Exrs., 3d Am. ed., 1717, 1763, 1781; id., 6 Am. ed., 2005; *Wheeler* v. *Thomas*, 7 Jurist N. S., 599.   But in Connecticut a court of equity has no such power.   The entire jurisdiction over the settlement of estates is given to the probate court, and the Superior Court has no jurisdiction whatever except as an appellate court.   *Mix's Appeal from Probate*, 35 Conn., 123; *Davis's Appeal from Probate*, 39 id., 395, 401.   Attempts have frequently been made to break in upon this exclusive jurisdiction of the probate court and to draw into courts of equity questions relating to the administration of estates, but they have uniformly failed.   *Judson* v. *Lake*, 3 Day, 318; *Bacon* v. *Fairman*, 6 Conn., 128; *Pitkin* v. *Pitkin*, 7 id., 315; *Bailey* v. *Strong*, 8 id., 281; *Beach* v. *Norton*, 9 id., 182; *Gates* v. *Treat*, 17 id., 392; *Bissell* v. *Bissell*, 24 id., 241; *Brush* v. *Button*, 36 id., 294.   But even conceding such a power to a court of equity in this state, yet the court can not render a judgment upon a petition of an executor or trustee for advice where it is not required for the guidance of the petitioner in his official capacity.   Beyond this it is extra-judicial and of no effect.   *Bamforth* v. *Bamforth*, 123 Mass., 280.   Here there was no duty to be performed on the part of Mr. Hollister as to which he desired advice.   Again, the petition did not make the present appellants and appellees parties adversary to each other, and call upon them to interplead and

defend their rights; and their appearance could not give a jurisdiction not claimed by the petition.*

2.  The decree of the probate court was erroneous in distributing the property as the property of Elnathan Atwater. We contend that it belonged absolutely to Margaret Atwater and passed by her will to Ruth Maltby.  Elnathan Atwater by his will gave one of the four parts into which he divided his estate to his "beloved daughter Margaret."  He did not give this fourth part of his estate to the trustees.  He gave to them the share which was already Margaret's—the share which he had taken from the body of his estate and given absolutely to her.  This share he placed with the trustees for a special purpose, requiring undoubtedly a legal estate to carry it out, but still a purpose subsidiary to and consistent with the absolute gift to her.  That purpose was to preserve the principal of her share for her children, if she should have any. It was prompted by the desire of her father to secure to her and the fruit of her body the fullest enjoyment of the estate. The contingency failing the trust failed, and the estate given to her absolutely remained no longer subject to any charge, but under her sole dominion.  A construction of this will which shall give this fourth part of the estate to the trustees and deprive Margaret of any vested interest whatever therein, not only does violence to paternal feeling but it requires the mutilation of the will.  It requires the fifth, sixth, seventh, eighth, and a part of the ninth articles to be stricken bodily from the will.  If the seventh article vested nothing in Margaret it is meaningless and useless.  But the will is "drawn with care and skill and framed of language apt and precise." If it is neither superfluous nor repugnant, it must be, though differing in object, consistent with the other parts of the will, and especially with the ninth article.  But the only consistent construction that can be put upon the two articles is that we have indicated.  And such a construction is the legal construction, because it is the natural one.  We do not hesitate

---

* This question was not decided by the court, but as it is one of much interest and was ably argued, it has been thought best to give the argument upon it on both sides.                                                         *R.*

to assert unqualifiedly that a devise and bequest to an unmarried daughter, subject to a trust, the apparent object of which is to preserve the estate for the benefit of contingent children and in default of children to such person as she may by will direct, and in the absence of such will to her heirs at law, has never yet been construed, either in England or in America, to be such an estate as would not pass under the will of the daughter. And even in cases where the *corpus* of the estate had been expressly given to trustees directly, the courts have broken through the trust in order to carry out the intention of the testator, where that intention apparently was to clothe the *cestui que trust* with the disposition of the estate. The intention thus expressed in the seventh article of Elnathan's will is again manifested by the provision of the ninth article, limiting the estate to her heirs-at-law, "according to the present statute of distributions of the state of Connecticut, if the said person had owned the same as his or her proper estate at the time of his or her death, and had died intestate and solvent." This limitation plainly indicates the intention of the testator, that the estate provided for her by the ninth article was an estate of inheritance, restricted only for a special purpose during her life. The construction, therefore, that shall vest this share of the estate in the trustees, with nothing in Margaret but a bare right to income for life, with a possible power of diversion by appointment, requires the further mutilation of Elnathan's will by expunging the clause referred to. It is needless to say that we have no right to thus erase any part of a will. The testator's intention must be interpreted by the whole will. It cannot with justice be said that this expression of an absolute gift is qualified by the gift of a power, or that the gift of a power may suggest that an absolute estate was not previously given. An absolute gift is never controlled by a power. It is the gift that controls the power. 1 Sugden on Powers, 119, 126. In a case there cited it was held that "subsequent words, giving her the power of appointment, were merely an *anxious expression of the intention* of the testatrix that she should have an uncontrollable power of disposing of the fund." See also *Langham* v.

*Nenny*, 3 Ves. Jr., 470. Therefore we submit this proposition as now a well-settled rule for the interpretation of wills, and sanctioned by the authorities—that where a testator provides that property shall go to his daughter absolutely, and then directs that the share so given shall be "settled," that is, so placed in trust that her children shall take it on her death, his object is to provide for the children, if any. The interest given to the daughter is only cut down for the sake of the children, and, if there are no children, the object is done away, and she takes absolutely. *Mayer* v. *Townsend*, 3 Beav., 443; *In re Sidney Hall's Estate*, 37 Law Times, N. S., 457; *Whittell* v. *Dudin*, 2 Jac. & Walk., 279; *In re Merceron's Trusts*, L. R., 4 Ch. Div., 182. In the last case the rule (and the estate was there given directly to trustees) is thus stated: "Whenever a will gives property to a person absolutely and then proceeds to dispose of that property for the benefit of the donee for life and afterwards for children of the donee, and it turns out that there are no children to take, the cutting down fails and the original gift remains; and as it was absolute so it remains absolute." See also *Loring* v. *Eliot*, 16 Gray, 573; *Vernon* v. *Vernon*, 53 N. York, 351. And we submit that the principle which governed the courts in these cases and led them to carry out the intention of the testators by holding the estates given to be estates of inheritance, is manifested, in a marked degree, in the only analogous Connecticut case reported. *Korn* v. *Cutler*, 26 Conn., 6. In *Johnson* v. *Stanton*, 30 Conn., 297, there was no limitation to the heirs of Zachariah Huntington, the donee of the power. It is expressly found that the residuary clause only operated on other property.

*H. B. Harrison* and *L. B. Morris*, contra.

1. The question presented by the appellants is, as between us and them, *res adjudicata*. Hollister's petition was not a mere application to the person who happened to be presiding in the Superior Court, asking for an expression of his private and personal opinion upon the questions presented in the petition. The petition was a suit. It was brought, in due

form, to the court as a court. It called upon the court to
"adjudge and determine" the questions. It was a bill in
equity; a bill "in the nature of a bill of interpleader." It
had, in reference to the questions involved in it, all the essen-
tial elements of a bill of interpleader. 1 Redfield on Wills,
492; 2 Story Eq. Jur., § 822; *Houghton* v. *Kendall*, 7 Allen,
72; *Horton* v. *Baptist Church*, 34 Verm., 309; *Osborne* v.
*Taylor's Admr.*, 12 Gratt., 117; *Bowers* v. *Smith*, 10 Paige,
193; *White* v. *Fisk*, 22 Conn., 31; *Johnson* v. *Stanton*, 30 id.,
297; *Crosby* v. *Mason*, 32 id., 482; *Jacobs* v. *Bradley*, 36 id.,
365; *White* v. *Howard*, 38 id., 342; *Wait* v. *Huntington*, 40
id., 9; *Bristol* v. *Austin*, id., 438; *Sheldon* v. *Rose*, 41 id.,
371; *Platt* v. *Platt*, 42 id., 330; *Dunham* v. *Averill*, 45 id.,
61; *Landon* v. *Moore*, id., 422; *Raymond* v. *Hillhouse*, id.,
467; *Woodruff* v. *Migeon*, 46 id., 236. It was brought for
the purpose of bringing into court parties who were making
conflicting claims to a fund held by Hollister as a trustee
under a will, so that they might implead one another and set
forth their respective claims against each other, and have
them finally adjudicated and settled. It did bring these par-
ties into court. They did implead one another. By their
pleadings they did so set forth their respective claims. The
court, being a court of competent jurisdiction, did "adjudi-
cate" the claims, and thereupon, by its decree, decided and
settled, in favor of us and against our present adversaries, the
question whether the fund in question ought to go to the heirs
of Margaret Atwater or to Ruth A. Maltby. That decree
(whether right or wrong) is conclusive, in all courts, against
these appellees, by way of estoppel; and it will remain so
conclusive against them in all courts, so long as it stands
unreversed. 2 Smith Lead. Cas. (H. & W. ed.), 579; Bige-
low on Estoppel, 15; *Betts* v. *Starr*, 5 Conn., 550, 554;
*Griswold* v. *Bigelow*, 6 id., 258, 264; *McLoud* v. *Selby*, 10 id.,
390, 396; *Holcomb* v. *Phelps*, 16 id., 127, 131; *Munson* v.
*Munson*, 30 id., 425, 433; *Hungerford's Appeal from Probate*,
41 id., 322, 327. The appellees cannot attack that decree
collaterally. Their only way of escaping from its binding
obligation (if there is any way) would have been to get it

reversed, by a direct attack, on motion in error or writ of error. When so reversed it would have ceased to bar and bind them anywhere. Until so reversed it continues to bar and bind them everywhere. But the decree, even if erroneous, (having been rendered by advice of the Supreme Court upon a reservation,) would not have been reversed on motion in error or writ of error. The Supreme Court would not have permitted the question to be raised before it, whether the decree was erroneous or not; and would not have listened to argument from the appellees on that question, even on motion in error or writ of error; because the question would have been in effect, though not in form, the same question which the Supreme Court had already adjudicated upon the original reservation. *Smith* v. *Lewis*, 26 Conn., 110, 116; *Nichols* v. *Bridgeport*, 27 id., 459, 462; *Fowler* v. *Bishop*, 32 id., 199; *New Haven & Northampton Co.* v. *The State*, 44 id., 376. A decree of the Superior Court, passed pursuant to the advice of the Supreme Court, is therefore practically irreversible. And it ought to be. For there should be some end to litigation; and when the Superior Court and the Supreme Court have both decided the same question between the same parties in the same way, that ought to end the matter. If then these appellees would not be permitted to attack that decree directly, much less will they be permitted, under cover of an appeal from probate, to attack it collaterally.

2. But, setting aside the question of *res adjudicata*, we say that the decree of the court of probate ought to be affirmed, because it is right. In the case of *Hollister* v. *Shaw and others*, 46 Conn., 248, the Supreme Court, pronouncing the law upon the identical facts presented by this record, decided that the fund in question ought to be distributed to the heirs of Margaret Atwater. Now, within one year after the rendering of that decision, the appellants ask this court to overrule it as bad law. The question thus proposed by the appellants ought not to be entertained at all by this court. That case was exhaustively argued and fully considered. If the law, applicable to that case and to this, was doubtful before that decision, it must be held doubtful no longer. The

principle of *stare decisis* requires this court to hold that the law was authoritatively settled by that decision. If it should seem necessary, or becoming in us, to make any argument in support of that decision, we must refer to the brief which we submitted in the former case, and to the thorough exposition given by this court of the reasons of its opinion in that case.

CARPENTER, J  This court construed the will of Elnathan Atwater in respect to the interest therein given to Margaret Atwater in the case of *Hollister* v. *Shaw et al.*, 46 Conn., 248. That was an application to the Superior Court by John C. Hollister, trustee of Margaret's share under the will, and executor of Margaret's will, for a construction of both wills. One object was to determine authoritatively what disposition should be made of that portion of Elnathan Atwater's estate which had been given in his will in trust for the benefit of Margaret. On the part of the present appellants it was contended that it belonged to Mrs. Maltby under the will of Margaret. The appellees contended that it went directly to the heirs of Margaret as legatees of the will of Elnathan. The court sustained the claim of the appellees.

Pursuant to the advice of this court the court of probate directed a distribution to the heirs of Margaret. From that decree the present appeal was taken. The appellants filed the following reasons for the appeal:

"*First.* Because the said probate court erred in holding that the estate given to Margaret Atwater by the will of her father, Elnathan Atwater, and set out to her in the distribu- of said Elnathan's estate, was not in fact her estate, but was the estate of said Elnathan.

"*Second.* Because the said probate court erred in holding that said estate did not pass to the devisees of the said Margaret, under her last will and testament, for the reason that the said Margaret had not exercised the power of appointment over the same.

"*Third.* Because the said probate court erred in holding that the said Margaret Atwater did not, by the will of her father, Elnathan, take such an estate in the one-quarter part

of his estate thereby given to her, that upon her death it was disposable by her last will and testament as her estate.

"*Fourth.* Because the fact is that the said Margaret Atwater intended by her last will and testament to exercise the power of disposition over said estate with which she was vested by the will of her father, Elnathan, and that she died in the belief that she had so disposed of said estate, and that therefore the said probate court erred in not finding that the said Margaret did in fact dispose of said estate by her last will and testament, and that it had passed to the devisees under her will.

"*Fifth.* Because the said probate court erred in holding that it was bound by the decree of the Superior Court in its order referred to, to find as a fact that the said Margaret Atwater had not exercised the power of disposition over said estate with which she was vested by the will of her father, Elnathan."

The appellees replied that the reasons of appeal were untrue and insufficient. They further replied by setting out at length the proceedings in the former case as a bar to this appeal. The appellants demurred.

Two issues were thus presented—1st, the sufficiency of the reasons of appeal, and 2d, the sufficiency of the facts alleged by the appellees in bar of the appeal.

Whether the former proceeding resulting in the decision of this court already referred to is a technical bar of this appeal is a question we need not discuss. We will therefore proceed at once to consider the question presented by the reasons of appeal.

A comparison of those reasons with the questions reserved in the former case will show that the questions now raised were raised and decided then.

The questions reserved, so far as they bear upon the question now under consideration, were as follows:—

"*First.* Whether Margaret Atwater in her will exercised the power of appointment provided for in the will of Elnathan Atwater, over that part of the trust estate held in trust for her.

" *Second.* Whether the heirs at law of Margaret Atwater are entitled to receive by distribution that part of the trust estate of Elnathan Atwater held in trust for her, notwithstanding her will devising her estate to Ruth A. Maltby as residuary legatee.

" *Third.* Whether the petitioner, as trustee of that part of Elnathan Atwater's trust estate held in trust for Margaret Atwater, holds the same since her death in trust to convey to her heirs at law, or in trust to convey to Ruth A. Maltby, the residuary legatee in her will.

" *Fourth.* Whether Elnathan Atwater by his will devised any estate to either of the four persons named therein, which they or either of them could dispose of by will without specifically directing, limiting and appointing what estate was so disposed of, as well as the person to whom it was so devised.

" *Fifth.* Whether Elnathan Atwater by his will devised any estate to either of the *cestuis que trust* therein, except a bare power of appointment."

It is obvious from the questions thus stated that the claim of the appellants on the former trial was two-fold—1st, that Margaret Atwater in her will exercised the power of appointment, and 2d, that under the circumstances she held said estate as her own, and that it passed by her will like any other estate owned by her.

There is however this difference. In the present case the appellants rely principally upon the claim that Margaret took by her father's will an absolute estate, (she dying without children,) which was disposed of by her will without being specifically mentioned or referred to; while on the former trial more stress was laid on the claim that she had in fact exercised the power of appointment.

But both questions were involved in the former case, both might have been made on that trial, both were in fact made, and both were decided by the court.

We might with propriety have declined to hear the case a second time, but the importance of the principles involved, and the magnitude of the interests depending upon the result,

have induced us to depart from the usual course and listen to the able arguments in behalf of the appellants upon a point but lightly pressed on the former trial.

That point however was noticed by the court. It is the first question considered in the opinion after stating the case, on page 252, and was expressly decided, all the judges concurring, although on the other question, whether Margaret Atwater had exercised the power of appointment, two of the judges dissented.

The point decided was that the estate never vested in Margaret, but vested in the persons named as trustees in trust for her during life, and after her death for her children, nominees or heirs at law as the case might be. It follows that the decree of the court of probate must be affirmed, unless we are now satisfied that that decision ought to be overruled.

A careful re-examination of the terms of the will in connection with the authorities cited convinces us that the decision is in harmony with the real intention of the testator.

In the fourth clause of the will he divides his property into four shares. In the seventh clause he disposes of one of the four shares as follows: "I give to my beloved daughter, Margaret Atwater, subject to the regulations and provisions hereinafter contained." And in the ninth clause his language is not only explicit but emphatic:—"Each and every principal, of each and every one of the parts and proportions of my estate, given by the fifth, seventh, and eighth articles of this will, as aforesaid, I give, devise and bequeath to Dennis Kimberly, Isaac H. Townsend and Thomas Atwater, and the survivors and survivor of them, as joint tenants in fee-simple and forever, as a distinct fund, upon the trusts and for the purposes following; that is to say:"

Then follows the trust in favor of the person named (Margaret) during life, "and upon the further trust, at her death, to pay the trust fund over to her child, children or their representatives in fee simple forever; and in default of such child, children, or representatives to such person or persons as the said Margaret by her last will and testament or in any instrument in writing in the nature thereof, shall direct, limit

or appoint; and in default of such direction, &c., to the heirs at law of the said Margaret, who shall be living at her death, in the same manner and in the same proportions as the same would have descended and been distributed to them according to the *present* statute of distributions of the state of Connecticut, if the said person had owned the same as his or her proper estate at the time of his or her death, and had died intestate."

It will be observed that the trust does not terminate at the death of Margaret, but the property continues subject to it, in express terms, until it is actually delivered over to the children, nominees or heirs at law; so careful was the testator to provide for the disposition of the property after the death of Margaret in every possible contingency.

Suppose the will had simply provided for children after the death of Margaret; omitting altogether the provision in favor of appointees and heirs. In that case if there had been children it would have been the ordinary case of a life estate only in Margaret with remainder to the heirs of her body. If she had died leaving no issue then perhaps the principle of *Mayer* v. *Townsend*, 3 Beaven, 443, and other cases hereinafter referred to, would apply and give her a perfect title. But the will goes further, and in default of children gives her the power of alienation by one species of conveyance—"a will, or an instrument in writing in the nature of a will." Suppose that had been all. But the power of alienation will not convert a clear life estate into a fee. *Lewis* v. *Palmer*, 46 Conn., 454. Much less will the contingent and limited power in this case. Nevertheless it is a circumstance that will throw light upon a will of doubtful construction. But in this case the nature and extent of the power are so restricted that it cannot have a controlling influence.

It is quite possible, in the case last supposed, in default of children and an appointment by will, there being no provision for such a contingency, that in order to avoid intestacy we might hold, in view of the authorities cited, that she took an absolute estate.

But the serious obstacle to our coming to that result is the

fact that the testator has provided for just that contingency, and has directed the trustees to deliver over that portion of his property to her heirs at law. But not, be it remembered, to her heirs at law generally. It is to be divided among them according to the then "*present* statute of distributions." Not the statute in force at the time of Margaret's death, but the statute in force at the time of her father's death, or possibly at the time when his will was executed—thirty years or more before her death. Now, suppose that during that time the statute of distributions in force when Elnathan Atwater's will took effect had been repealed, and an entirely different rule of descent had been substituted. Can there be any doubt that the repealed statute would furnish the rule for distributing this portion of his estate among Margaret's heirs? If so is it not very clear that they would take as legatees of Elnathan and not as heirs at law of Margaret? We think the construction of the will must be the same whether the statute is changed or not. The introduction of that one word "present" into the will was a slight circumstance, but slight circumstances are often significant and not to be overlooked in the construction of wills of doubtful meaning.

Again. Could Margaret Atwater in her lifetime have sold the trust estate and given a good title? Why not, if she had power to make a testamentary disposition of the estate otherwise than by an exercise of the power conferred upon her in her father's will? A sale, if effectual, would have destroyed the claim of the heirs under the will, would have made it impossible for the trustees to obey its plain directions, and would have defeated the manifest intention of the testator.

A brief reference to some of the authorities cited will close this discussion.

In *Mayer* v. *Townsend*, 3 Beavan, 443, the testator directed his trustee to raise £5,000 for his daughter Elizabeth, "then upon trust to place his daughter's legacy at interest on government or real security," and to pay the income to her for life to and for her sole and separate use and benefit, free from the debts or control of any husband with whom she might marry. At her death he directed that the legacy so given should be

equally divided between her children, subject to a provision that she might by will give her husband a life estate in the fund. The daughter never married, and the will did not provide for the contingency of her dying without issue. It was held that the limitations imposed upon the estate never having taken effect, the estate remained absolute in her, and that her executor was entitled to it.

*In re Sidney Hall Estate*, 37 Law Times, N. S., 457. In that case it was held that "where there is an absolute gift to children, followed by a direction that the daughters' share shall be settled on themselves for life, with remainder to their children, the daughters' interests are only cut down for the sake of the children, and any daughter who dies without issue takes her share absolutely."

The same question arose and was decided in the same way in *Whittell* v. *Dudin*, 2 Jac. & Walk., 279. The same principle is recognized in *Loring* v. *Elliott*, 16 Gray, 568. See also *Vernon* v. *Vernon*, 53 N. York, 351.

The distinction between those cases and the present is obvious. In none of them was there any disposition of the estate in default of children. If there had been we cannot assume that the courts would have disregarded it.

Our conclusion is that it is reasonably certain that Elnathan Atwater intended, in the existing state of things, that the estate in question should go to the persons who are Margaret Atwater's heirs, as his legatees.

The Superior Court is advised to render judgment for the appellees.

In this opinion the other judges concurred.