GEORGE M. AMERIGE & another, trustees, vs. ATTORNEY
GENERAL & others.

Middlesex.    April 5, 1949. — September 30, 1949.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Power. Rule against Perpetuities. Conflict of Laws. Devise and Legacy,*
*Power, Rule against perpetuities, Intestacy. Trust, Resulting trust,*
*Reversion to settlor. Executor and Administrator, Appointive prop-*
*erty, Distribution. Exoneration.*

The law of Massachusetts governed the validity under the rule against
perpetuities of interests in Massachusetts real estate arising from the
exercise of a power of appointment created by the will of one who died
domiciled in New York.

In the case of a will making the testator's brother life beneficiary of a
trust with a general testamentary power of appointment over the
trust property, followed by a will of the brother placing such property
in trust for the benefit of his daughter for life and giving her a general
testamentary power of appointment over it, and by a will of the
daughter establishing a trust of such property for the benefit of her
children for their lives and giving remainder interests therein contin-
gent until the deaths of her children, where the first testator's brother
and the brother's daughter, but not her children, were living at the
death of the first testator, the life interests of the brother, his daughter
and her children were valid under the rule against perpetuities, but
the remainder interests effective at the deaths of the daughter's chil-
dren were remote and invalid under the rule.

Provisions in the residuary clause of a will establishing a single trust of
the residue "and any property over which" the testatrix had a power
of appointment showed an intent on her part to withdraw appointive
property from the operation of the instrument creating the power and
to capture such property for her own estate; and, where certain final
interests created in the appointive property by such provisions of her
will were remote and invalid under the rule against perpetuities, those
interests passed to her estate by resulting trust and must be distributed
as intestate property.

The validity under the rule against perpetuities of interests in personal
property arising from the exercise of a power of appointment created
by trust provisions in the will of one who died domiciled in New York,
and the applicability of the doctrine of capture in determining the
disposition of the property if such interests were remote, were gov-

erned by the law of Massachusetts where an intent of the testator that it should so govern appeared from the facts that both the trustees named in the will and the donee of the power were residents of Massachusetts, that a substantial portion of the trust property was Massachusetts real estate, that the will provided that the appointment of successor trustees should be subject to the approval of the judge of a specified Massachusetts Probate Court, and that the testator contemplated that the trust would be administered and the power exercised in Massachusetts.

Upon the valid exercise of a general testamentary power of appointment by a will of the donee mingling in a single trust his own and appointive property for the benefit of his daughter for life and giving her a general testamentary power of appointment over the trust property, followed by a will of the daughter exercising her power but purporting to create interests which were invalid because remote under the rule against perpetuities with respect to the original appointive property, there was no merit in a contention that the doctrine of allocation should be applied and the debts, expenses and legacies in the estate of the first donee be charged against the original appointive property; the first donee could not have contemplated that the second donee would make an invalid appointment.

In connection with a trust fund created by the will of a woman and consisting of her own property, property of her father over which she had a general testamentary power of appointment by his will, and property of her uncle over which her father had had such a power by the uncle's will and which her father had subjected with his own property to the power given by him to her, the proportion of the fund attributable to the uncle's estate should be determined on the basis of percentages fixed as of a time, after the deaths of the uncle and the father and before the death of the woman, when the property derived from the uncle's estate and that derived from the father's estate, previously handled separately by trustees, had been merged by them; and, in determining such proportion, debts, expenses and legacies should be charged against each kind of property pro rata.

Debts, expenses and legacies in the estate of a donee of a general testamentary power of appointment should not first be charged against the donee's own residuary property in exoneration of the appointive property, but should be charged pro rata against both, where the residuary provisions of the donee's will applied indistinguishably to her own property "and . . . property over which I have . . . power of appointment by will" as one fund and the donee in effect had appointed to her own estate.

Payments of principal, made to children of a testatrix as the life beneficiaries of a testamentary trust fund consisting both of property of the testatrix and property over which she had a general testamentary power of appointment, need not be allocated to the testatrix's own property notwithstanding that the provisions authorizing such payments were remote and invalid under the rule against perpetuities so far as the appointive property was concerned, where the final interests

created by the testatrix were also remote and invalid as applied to the appointive property and passed by resulting trust to the testatrix's estate and were distributable as intestate property to such children as her sole heirs and next of kin.

PETITION, filed in the Probate Court for the county of Middlesex on May 13, 1948.

The case was heard by *Monahan,* J.

*D. Holmes* stated the case.

*R. G. Wellings,* for Boardman and others.

*J. D. St. Clair,* for Waters.

*C. Hardee,* for Rotch Travelling Scholarship, Inc., and another.

*W. B. Trafford,* for Massachusetts Society for the Prevention of Cruelty to Animals.

*G. M. Taylor, Jr.,* for Amerige, executor.

*P. A. Hendrick,* for Goddard.

*S. G. Orr,* for Adams, executor, submitted a brief.

SPALDING, J. This is a petition for instructions by the trustees under the will of Mary Elizabeth Williams, late of Hopkinton. The case was heard in the Probate Court on a statement of agreed facts and was reserved and reported to this court without decision. G. L. (Ter. Ed.) c. 215, § 13.

The assets in the hands of the trustees, though treated as one fund, are derived from the following sources: property owned by Mary Elizabeth Williams, property which came to her from her father, James Leeds, and personal property and Massachusetts real estate from the estate of her uncle Timothy C. Leeds over which James Leeds had exercised a general testamentary power of appointment. It is with respect to the appointed property from Timothy Leeds's estate that the principal questions for decision have arisen.

Timothy Leeds died a resident of New York May 27, 1864. His will and codicil [1] were duly allowed in a Surrogate's Court in New York and ancillary probate was granted here by the Probate Court for Suffolk County. By his will Timothy left one half of his property in trust for the benefit

---

[1] The codicil is not material to any of the questions presented for decision.

of his brother James for life " . . . and upon the decease
of the said James, then to hold the said half part to the use
of such person or persons and upon such trusts and condi-
tions and for such purposes as he shall by his last will direct
and appoint." The will contained an alternative disposi-
tion in the event James should die intestate. James Leeds
and his children Herbert C. Leeds, Mary Elizabeth Williams
and Annie F. Boardman were living at Timothy's death but
no child of Mary Elizabeth Williams had then been born.

By Timothy's will James Leeds and Samuel E. Guild,
both of Boston, were named trustees. James was also the
executor. The will provided that in case of the death or
resignation of either of the trustees the persons holding the
majority interest of the trust could appoint a successor
trustee "subject however to the approval of the person who
shall then hold the office of Judge of Probate for the County
of Suffolk" in the Commonwealth of Massachusetts. The
executor's inventory filed in the Surrogate's Court in New
York showed personal property in the amount of $384,700.52.
The executor's inventory filed in connection with the ancil-
lary proceedings in Suffolk County disclosed Boston real
estate valued at $50,000. The final account of James Leeds
as executor and trustee of Timothy's estate was settled by
a decree of the Surrogate's Court in New York on January
23, 1869. An accounting for the period October, 1868, to
April, 1874, was filed in the Probate Court for Suffolk
County.[1] Thereafter accountings of the Timothy Leeds
trust were filed in the Probate Court for Suffolk County
until the property was "transferred to the trustees . . .
[under the will of] James Leeds during the accounting
period ending March 2, 1911, and mingled with the general
trust" created in James's will.

James Leeds died March 22, 1875, a resident of Massa-
chusetts, and his will and three codicils were allowed by
the Probate Court for Suffolk County. The first codicil
provided in part as follows: "I direct and appoint that the

---

[1] The record states, "incidental account [was] filed in King's County,
New York, as final accounting in that State."

property which my brother Timothy C. Leeds empowered me by his last will and testament, shall be considered and held, in all respects, as part of my own property, and that, when I have bequeathed or devised a proportion or the residue of my estate, the estate of my brother, over which I have the power of appointment, shall be considered and devised and bequeathed as if they were a part of my estates." By the eighth article of his will James left one third of his estate to his trustees for the benefit of his daughter Mary Elizabeth Williams for life and upon her death "to hold the said estates real and personal to the uses of such person or persons as she shall by her last will or any instrument in the nature of one direct and appoint . . . and if she shall die intestate then to hold the said fund to the use of her children and the issue of any deceased children taking by representation." There were gifts over "upon default of such will, children and issue."

At his death James was survived by the following persons: his widow, who died in 1916, his son Herbert, two daughters, Annie Fearing Boardman and Mary Elizabeth Williams, and two grandchildren, Edward Shirley Goddard and Mary Elizabeth Goddard, who were the children of Mary Elizabeth Williams and were born subsequent to the death of Timothy.

Mary Elizabeth Williams died a resident of Massachusetts February 10, 1925, leaving no spouse and survived by her children Edward Shirley and Mary Elizabeth Goddard. She left a will, the seventh article of which provides in part as follows: "My said daughter Mary E. Goddard, and my said son Edward Shirley Goddard, were both born prior to the decease of my father, James Leeds late of Boston, Massachusetts, under whose will I have a power of appointment. All the rest, residue and remainder of my property, of every name and nature, real and personal, and any property over which I have the power of appointment by will, or otherwise, I give, devise and bequeath to the trustees . . . [named herein and their successors] but in trust nevertheless, for the following purposes, namely:" to divide the residue into two equal shares and to hold one for each child

during his or her life, and then to his or her issue, but in default of such issue, to hold the whole for the life of the survivor, and upon the death of the survivor to his or her issue, but if on the death of the survivor no issue of either be surviving, then to pay over the property discharged of all trusts in equal shares to the following charities: Rotch's Travelling Scholarship, the Massachusetts Society for the Prevention of Cruelty to Animals, and the Animal Rescue League. Under the terms of the seventh article, as modified by a codicil, the trustees were empowered to pay to each child out of principal a sum not in excess of $10,000.

During the lifetime of Mary Elizabeth Goddard the income of her share of the trust created by the seventh article of her mother's will was paid to her and she also received payments out of principal amounting to $7,000. She died a resident of Boston, May 16, 1940, without issue, leaving a will and codicil. [1]

The trustees under the will of Mary Elizabeth Williams paid one half of the income of the trust to Edward Shirley Goddard until the death of Mary Elizabeth Goddard, and thereafter, until September 30, 1947, he received the entire income thereof. Since that date he has received one half of the income and the remaining income has been held by the trustees pending the outcome of the present proceeding. The trustees have paid to Edward, who is still living, sums out of principal amounting to $10,000.

---

[1] Article Second of her will contained a recital to the effect that she understood that her mother, Mary Elizabeth Williams, had "a power and/or powers to dispose of certain property under the will of Timothy C. Leeds . . . and under the will of James Leeds . . . and [had] exercised the same under the Seventh Article of her will"; that it had been stated to her that there was some doubt as to the validity of the gifts over to the charitable corporations named in that article; and that she desired to carry out the provisions of that article as far as she was able after the decease of her brother Edward Shirley Goddard. She then went on to provide that "any and all property comprising the Timothy C. Leeds or James Leeds Funds, so called" which she had the right to appoint or dispose of whether it came to her or she had such right "under the will of Timothy C. Leeds and/or the will of James Leeds and/or the will of . . . [her] mother . . . Mary Elizabeth Williams" was to be held in trust to pay the income to Edward Shirley Goddard during his life and at his death to distribute the fund in equal shares to Rotch's Travelling Scholarship, the Massachusetts Society for the Prevention of Cruelty to Animals, and the Animal Rescue League.

The principal contentions of the parties interested in the disposition of the fund in question may be summarized as follows: The respondent Waters, who would take through a partial intestacy of Timothy, argues that the law of New York governs with respect to that percentage of the fund which is derived from Timothy's personalty, and accordingly the interests therein appointed after Mary Elizabeth Williams's life estate (namely, the Goddard life estates, the life estate to the survivor, the provision for payment of principal, the remainder to the Goddard issue, and the remainder to the charities) are invalid as violating the New York perpetuities statute; that the Massachusetts law applies to the realty, and by that law the interests after the Goddard life estates are invalid; that the doctrine of capture set forth in *Fiduciary Trust Co.* v. *Mishou*, 321 Mass. 615, 624–625, does not apply to any of the interests; that the default clause in the will of James Leeds is not effective; and that the invalidly appointed property must be considered intestate property of Timothy. The Boardman group, who claim in part through Annie F. Boardman (a daughter of James Leeds), contend that the property should be distributed as intestate property of James by treating James as the donor of the power with respect to the personalty, to which the New York law applies, and by treating him as the donee as to the realty, to which Massachusetts law, including the doctrine of capture, applies. Edward Shirley Goddard argues that the law of New York applies to the personalty; that Mary Elizabeth Williams captured this property for her estate; and that there is a resulting trust to her estate. The executors of Mary Elizabeth Williams and of Mary Elizabeth Goddard urge that Massachusetts law determines the validity of the interests sought to be created with respect to both the rule against perpetuities and the consequences of a partially invalid appointment; and that this property was captured by Mary Elizabeth Williams and will go as a resulting trust to her estate. The executor of Mary Elizabeth Goddard contends in the alternative that the property is to go to the issue of Mary Eliza-

beth Williams by the default clause in James's will. The
position of the charitable remaindermen and the guardian
ad litem is that under the doctrine of allocation no percent-
age of the fund now in the hands of the trustees under the
will of Mary Elizabeth Williams can be considered as coming
from Timothy Leeds and that the appointment of Mary
Elizabeth Williams is completely valid. [1]

1. As stated above, Timothy's property over which James
and Mary Elizabeth Williams had powers of appointments
comprised real estate situated in Massachusetts, and personal
property. Questions relating to the validity and effect of
the power contained in his will and questions arising out of
the exercise of the power, in so far as they concern real
estate, must be determined by the law where the real estate
is situated. Restatement: Conflict of Laws, §§ 234, 235,
236. Beale, Conflict of Laws, §§ 234.1, 235.1. *Sewall* v.
*Wilmer*, 132 Mass. 131, 138. *Russell* v. *Joys*, 227 Mass.
263, 267. *Ligget* v. *Fidelity & Columbia Trust Co.* 274 Ky.
387. *Lawrence's Estate*, 136 Pa. 354. No contention is
made to the contrary. Thus the question whether the
exercise of the power created interests in the real estate
which are remote under the rule against perpetuities is to
be governed by the law of this Commonwealth rather than
by the law of Timothy's domicil, New York. *Bundy* v.
*United States Trust Co.* 257 Mass. 72, 79. By § 42 of the
real property law of New York (N. Y. Consol. Laws,
c. 52) limitations extending beyond two lives in being are
remote, whereas in Massachusetts the common law rule
prevails.

Under the common law rule the interests which Mary
Elizabeth Williams attempted to create after the life estates
to her children Edward Shirley and Mary Elizabeth Goddard
are remote. It is settled in this Commonwealth that "the
remoteness of an appointment, made in the exercise of a
power to appoint by will alone, so far as affected by the rule

---

[1] No contention is made by any of the respondents that any of the limita-
tions in the will of Mary Elizabeth Williams are invalid with respect to prop-
erty owned outright by James or herself.

against perpetuities must be measured from the time of the creation and not the exercise of the power." *Minot* v. *Paine*, 230 Mass. 514, 523. *Fiduciary Trust Co.* v. *Mishou*, 321 Mass. 615, 622. The equitable life estate given to James Leeds and that which he gave by the appointment to his daughter Mary Elizabeth Williams were, of course, valid inasmuch as both were lives in being at Timothy's death. The life estates in the appointed property given by Mary Elizabeth Williams to her children Edward Shirley and Mary Elizabeth Goddard were valid since these vested at their mother's death. But the limitations beyond that, namely, those to the issue of the life tenants, the cross remainders, the gifts to the charities and the provisions with respect to payments of principal, were remote. None of these limitations was certain to take effect within twenty-one years from the death of Mary Elizabeth Williams. It is settled that a limitation over which violates the rule against perpetuities "will be considered as stricken out, leaving the prior disposition to operate as if a limitation over had never been made." *Greenough* v. *Osgood*, 235 Mass. 235, 242. *Lovering* v. *Worthington*, 106 Mass. 86, 88.

We pass now to the question of what disposition is to be made of that percentage of the fund derived from Timothy's real estate which Mary Elizabeth Williams did not properly appoint. The situation is one, we think, where the principle of capture becomes applicable. That principle is that "where the donee of a general power attempts to make an appointment that fails, but where, nevertheless, the donee has manifested an intent wholly to withdraw the appointive property from the operation of the instrument creating the power for all purposes and not merely for the purposes of the invalid appointment, the attempted appointment will commonly be effective to the extent of causing the appointive property to be taken out of the original instrument and to become in effect part of the estate of the donee of the power." *Fiduciary Trust Co.* v. *Mishou*, 321 Mass. 615, 624. Other cases applying this principle are *Dunbar*

v. *Hammond,* 234 Mass. 554, *Talbot* v. *Riggs,* 287 Mass. 144, and *Old Colony Trust Co.* v. *Allen,* 307 Mass. 40. See Gray, Rule against Perpetuities (4th ed.) § 540.1. And where, as here, the invalid appointments are in trust there will be a resulting trust to the estate of the donee of the power. *Fiduciary Trust Co.* v. *Mishou,* 321 Mass. 615, 624. Restatement: Property, § 365, and Trusts, § 426. Scott on Trusts, § 426. The complete blending by Mary Elizabeth Williams in her will of the appointive property with that which she owned outright shows her intent to capture the property for her own estate. Since the remote limitations were in the residuary clause, the property cannot pass under that clause for the reasons which are set forth in *Fiduciary Trust Co.* v. *Mishou,* 321 Mass. 615, at pages 626 and 627.

2. With respect to that portion of the fund derived from Timothy's estate which was personal property, questions of considerable difficulty are presented. At the outset it is necessary to decide what law is to govern. Ordinarily in the case of personal property questions as to both form and substance relating to the validity and effect of an instrument exercising a power of appointment created by will are determined by the law of the domicil of the donor of the power. *Sewall* v. *Wilmer,* 132 Mass. 131, 136–137. *Walker* v. *Treasurer & Receiver General,* 221 Mass. 600, 603. *Bundy* v. *United States Trust Co.* 257 Mass. 72, 79. *Hogarth-Swann* v. *Weed,* 274 Mass. 125. *Boston Safe Deposit & Trust Co.* v. *Prindle,* 290 Mass. 577, 581. *Pitman* v. *Pitman,* 314 Mass. 465, 470. See Gray, Rule against Perpetuities (4th ed.) § 540.2. We are concerned here not with the validity of the instrument exercising the power or whether the power was exercised but rather with the nature and extent of the interests resulting from its exercise. Whether the principle just stated is applicable here is of importance not only as to whether the New York [1] or Massachusetts

---

[1] See Personal Property Law, N. Y. Consol. Laws, c. 45, § 11. In New York, as in Massachusetts, for the purpose of applying the rule against perpetuities an appointment is measured from the time when the power is created. *Fargo* v. *Squiers,* 154 N. Y. 250, 259. *Low* v. *Bankers Trust Co.* 270 N. Y. 143, 148.

rule against perpetuities is to govern but also as to whether
the doctrine of capture, discussed above, is applicable. [1]
While we do not doubt that the principle stated above is
the one ordinarily to be applied, we are of opinion that it
ought not to govern here. It has been said that the basis
for the principle is that the property subject to the power
is considered as belonging to the donor. See *Pitman* v.
*Pitman*, 314 Mass. 465, 471. But this is not always decisive.
The intention, express or presumed, of the donor has also
been considered as a factor of importance. *Sewall* v. *Wilmer*,
132 Mass. 131, 137. In *Russell* v. *Joys*, 227 Mass. 263, the
question for decision was whether a power of appointment
created by an instrument (an antenuptial agreement) made
by a Massachusetts resident, who was also the donee of the
power, was validly executed by a will admitted to probate
in Wisconsin where the donor-donee was domiciled at her
death. In holding that the question was to be determined
by the law of Massachusetts the court said, "On all the
facts we are of opinion that the settlor manifested an in-
tention to have the trust administered, and the validity of
the appointment determined by the law of Massachusetts"
(page 267). As bearing on the question of the donor's
intent the court took into consideration the facts that the
donor was domiciled here when the power was created, that
the trustee resided here, and that the property (originally
real estate) was situated here. See also *Greenough* v. *Osgood*,
235 Mass. 235; *Hutchins* v. *Browne*, 253 Mass. 55, 58. We
are aware that the powers of appointment in *Russell* v.
*Joys* and *Greenough* v. *Osgood* were contained in trusts
created inter vivos and that in such trusts the intent of the

---

[1] Whether the doctrine of capture, as applied in this Commonwealth,
obtains in New York is not clear. We have found no case decided by the
Court of Appeals in which the doctrine has been expressly adopted or repudi-
ated. In one case (*Matter of Beaumont*, 147 Misc. [N. Y.] 118) the court
cites with apparent approval decisions in other jurisdictions which recognize
the principle but it does not appear to have applied it. There are decisions,
however, where the facts would seem to be such as would afford an opportunity
for applying the doctrine but the court did not do so. See *Matter of Hayman*,
134 Misc. (N. Y ) 803; *In re Hellinger's Estate*, 83 N. Y. Sup. (2d) 10; *In re
Lathers' Will*, 64 N. Y. Sup. (2d) 757; *Guaranty Trust Co.* v. *New York Trust
Co.* 297 N. Y. 45. In none of these cases, however, was the doctrine discussed.

settlor has been accorded particular importance in determining the choice of law. *Wilmington Trust Co.* v. *Wilmington Trust Co.* 26 Del. Ch. 397. *Hutchison* v. *Ross,* 262 N. Y. 381. Land, Trusts in the Conflict of Laws, §§ 21.1 and 24. But we think intent also of significance where a testator creates powers of appointment by testamentary trust.

In the case at bar there are several factors which shed light on the intent of Timothy, the testator-donor. The trustees both were residents of Massachusetts. One of them, James, was the donee of the power. A substantial portion of the property consisted of real estate situated here. Timothy's will provided that the appointment of successor trustees was to be "subject . . . to the approval of the . . . Judge of Probate for the County of Suffolk" in the Commonwealth of Massachusetts. We think it plain that he intended the trust to be administered here, as in fact it was. See Restatement: Conflict of Laws, § 298. The trust, therefore, would be administered according to the law of this Commonwealth. Restatement: Conflict of Laws, § 299. See *Sewall* v. *Wilmer,* 132 Mass. 131, 137; *Codman* v. *Krell,* 152 Mass. 214; *Greenough* v. *Osgood,* 235 Mass. 235. It is reasonable to infer that Timothy contemplated that the power given to James would be exercised here. Timothy manifested an intention not only that the trust be administered here and according to our law but also that that law should determine the extent and nature of the interests created by the exercise of the power created by his will.

An analogy furnishing support for the conclusion here reached may be found in cases dealing with testamentary trusts. Ordinarily the validity of a testamentary trust of personal property is determined by the law of the testator's domicil at the time of his death. *Fellows* v. *Miner,* 119 Mass. 541. *McCurdy* v. *McCallum,* 186 Mass. 464, 468. Restatement: Conflict of Laws, § 295. Beale, Conflict of Laws, § 295.1. But this principle has not been applied invariably. Thus where testamentary trusts of personal property were

to be held and administered in a foreign State and were valid in such State but invalid in the State of the testator's domicil they have been upheld. Land, Trusts in the Conflict of Laws, §§ 18 and 19. *Chamberlain* v. *Chamberlain*, 43 N. Y. 424. *Hope* v. *Brewer*, 136 N. Y. 126. *Matter of Sturgis*, 164 N. Y. 485. *Lanius* v. *Fletcher*, 100 Tex. 550. *Matter of Chappell's Estate*, 124 Wash. 128. *Parkhurst* v. *Roy*, 7 Ont. App. 614. *Fordyce* v. *Bridges*, 2 Phil. Ch. 497. See *Wilmington Trust Co.* v. *Wilmington Trust Co.* 21 Del. Ch. 188. It is true that in most of these cases charitable trusts were involved but in two of them (*Lanius* v. *Fletcher* and *Matter of Chappell's Estate*) the trusts were not charitable. In some of the decisions the court gave considerable weight to the presumed intent of the testator. In *Wilmington Trust Co.* v. *Wilmington Trust Co.* 21 Del. Ch. 188, the rationale of the rule was said to rest "on the principle that since such questions of public policy as are embodied in the rule against perpetuities and in the mortmain statutes can be of legitimate interest only as to property intended to be held in the particular State where the public policy prevails, it becomes a matter of no concern to that State if public policy in another jurisdiction permits property to be received and held under more liberal regulations than in the former" (page 196). We see no reason why on principle the reasoning underlying these cases should not apply to a case like the present involving the exercise of a power of appointment. We hold, therefore, that the interests created by the limitations contained in the will of Mary Elizabeth Williams are to be determined by the law of Massachusetts. It follows that the personalty derived from Timothy's estate is to go as a resulting trust to the executor of the will of Mary Elizabeth Williams, to be distributed as intestate property. By applying the principle of capture this result would be reached under either the Massachusetts or the New York rule against perpetuities.

3. The charities, as noted above, advance the argument that none of the property appointed by Mary Elizabeth Williams is derived from property of Timothy. They invoke

the principle that where the donee of a general power of appointment disposes of owned and appointive property as a single fund the appointive property is allocated to the various dispositions of such fund in such manner as to give the maximum effect to such dispositions. That principle is recognized by our decisions (*Stone* v. *Forbes*, 189 Mass. 163, 170–171; *Minot* v. *Paine*, 230 Mass. 514, 525) and by the American Law Institute in § 363 of the Restatement: Property. Thus, it is argued, James Leeds dealt with his own and the appointive property as a single fund and to give the maximum effect to his dispositions the debts, expenses, legacies and residuary gifts must be charged against the appointive property and if this is done that property is exhausted and there is no property of Timothy remaining which Mary Elizabeth Williams could appoint. But that principle is not applicable here. In the case at bar there were successive donees of the power created by Timothy, James Leeds and Mary Elizabeth Williams. The appointments which violate the rule against perpetuities were made by Mary Elizabeth Williams, the second donee. None of the appointments made by James is invalid and no contention is made to the contrary. In all of the cases we have seen where the principle of allocation has been applied the valid and invalid dispositions have been made by the same person in the same will. To give the maximum effect to such dispositions under the principle of allocation the law is attempting to carry out the presumed intent of the testator. The doctrine ought not to be applied in the case of successive donees where the dispositions of the first donee are valid and those of the second invalid. It cannot reasonably be said that James contemplated that Mary Elizabeth Williams would exercise the power improperly with the result that he must be presumed to have intended that his dispositions be charged against the appointive property.

4. It becomes necessary to determine what proportion of the fund in question can be considered as having come from Timothy's estate. The respondents are not in agreement on this question. The following is stated in the stipu-

lation of agreed facts: "The correct mathematical computation of the proportion of the funds in the hands of the trustee . . . [under the will of] Mary E. Williams derived from the various sources, tracing the specific assets specified in the foregoing paragraphs and striking proportions in a general fund at each point indicated above at which funds were mingled, is as follows:

|                        |   |   |   |   |   |   |        |
|------------------------|---|---|---|---|---|---|--------|
| Property of —          |   |   |   |   |   |   |        |
| Mary E. Williams       | . | . | . | . | . | . | 16%    |
| James Leeds            | . | . | . | . | . | . | 31%    |
| Timothy C. Leeds       |   |   |   |   |   |   |        |
| Real Estate            | . | . | . | . | . | . | 6%     |
| Personal Property      | . | . | . | . | . | . | 47%    |
|                        |   |   |   |   |   |   | 100%"  |

The stipulation then states that "With regard to the foregoing computation the parties hereto admit only . . . [its] mathematical correctness . . . and do not admit that the method followed in making . . . [it] is correct as a matter of law." Some of the respondents urge that the appointive property ought to be determined on the basis of the foregoing percentages. Others, especially the charities, contend that these percentages are improper and suggest different ones.[1] The percentages arrived at by the charities are obtained by computing what percentage of the fund in question at the time of Mary Elizabeth Williams's death was owned by her outright. As to the balance they have figured the proportion of James's property and that which came from Timothy's estate on the basis of ratios which one bore to the other as of the death of James. In support of this position they rely on *Fiduciary Trust Co.* v. *Mishou*, 321 Mass. 615, 632–633. In the *Mishou* case the property owned by Mrs. Parker and the appointive property coming from the trust established in 1851 were mingled and became one

[1] The suggested percentages are:
Property of —
Mary Elizabeth Williams . . . . . 22.911%
James Leeds . . . . . . . 40.812%
Timothy C. Leeds . . . . . . 36.277%

fund shortly after Mrs. Parker's death in 1878. It was held that the proportions of owned and appointive funds should be established in so far as they could be traced, as of the time that they were mingled. Here the fund owned by James and that coming from Timothy's estate were held separately until the accounting period ending in 1911, when they were merged. Applying the principle of the *Mishou* case to the facts here, we are of opinion that the proportion of the fund attributable to Timothy's estate now held by the trustees of Mary Elizabeth Williams ought to be determined, if possible, on the basis of percentages fixed as of that time. No better method appears to be available. The percentages contained in the stipulation apparently were not established in that manner and on this record we are in no position to make the computation. The case, therefore, should be remanded to the Probate Court in order that the proportions be established by the method just outlined. In determining these proportions the debts, expenses and legacies ought to be chargeable against each fund on a pro rata basis. *Fiduciary Trust Co.* v. *Mishou*, 321 Mass. 615, 633. For the reasons set forth in the *Mishou* case there is no occasion here to apply the principle of exoneration illustrated by *Tuell* v. *Hurley*, 206 Mass. 65. The debts, expenses and legacies of Mary Elizabeth Williams ought also to be charged against each fund on a pro rata basis in computing the amount of appointive property in her estate.

5. Finally it has been argued that the payments of principal to Mary Elizabeth and Edward Shirley Goddard amounting in all to $17,000 should be treated as having been paid out of property other than that derived from Timothy's estate under the doctrine of allocation. But we are of opinion that that doctrine is not applicable. It is true, of course, that as to Timothy's property the limitations as to these payments were remote because measured from the creation of Timothy's power they might take effect more than twenty-one years after the death of Mary Elizabeth Williams, the last life in being. But in the view that we take of the case allocation is not necessary to save the payments.

.Edward Shirley and Mary Elizabeth Goddard became entitled to the appointive property as heirs and next of kin of Mary Elizabeth Williams at her death. Consequently, since they own the entire interest in that property, the payments of principal to them were not improper. Had they not become entitled to the property by reason of the resulting trusts a different question would be presented.

The case is remanded to the Probate Court for further proceedings in conformity with this opinion and the trustees are to be instructed in accordance therewith. Costs and expenses of appeal are to be in the discretion of the Probate Court.

*So ordered.*