GUARANTY TRUST COMPANY OF NEW YORK ET AL., EXECUTORS AND TRUSTEES (ESTATE OF JOHN H. HARRIS) *v.* NEW YORK CITY CANCER COMMITTEE ET AL.

DALY, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued May 8—decided June 24, 1958

*Thurston Greene,* for the plaintiffs.

*Ernest McCormick,* with whom was *Lee C. Fielden,* for the defendant Peter Bent Brigham Hospital.

*John N. Cole,* for the named defendant.

*Jonathan F. Ells,* for the defendant Hoes and, pro se, as guardian ad litem for undetermined charities.

KING, J. This is an action seeking a construction of certain portions of the will and codicil of John H. Harris, late of Salisbury, Connecticut. The questions propounded fall into two main groups. The first group concerns the right of the trustees to invade the principal of the trust corpus to carry out the provisions for the testator's widow. The second group concerns the proration of taxes, especially on the residuary gifts.

Of the first six articles of the will as amended by the codicil, the first three are administrative and only the last three are dispositive. Articles fourth and fifth, respectively, give all tangible personal property and all real property to the testator's widow. Article sixth provides for a number of pecuniary legacies to various friends and servants. The definition in subsection (g) of article sixth of "net estate available for distribution," as used in that article, is by its express terms to be employed only in determining the applicability of a provision for the abatement of these legacies in the contingency that the provisions made in the will for the widow should fall below a certain amount. Since the stipulation shows that they far exceed that amount, the definition is inoperative. It is inapplicable to any other article of the will and consequently is of no materiality in the determination of the questions propounded in the stipulation.

Article seventh disposes of the residue of the estate. The dispositions made by this article, as amended by the codicil, in summary are as follows: (a) The net income of 25 per cent to the testator's widow, and at her death the "then remaining corpus"

equally to Peter Bent Brigham Hospital in Boston, hereinafter referred to as the hospital, and the New York City Cancer Committee, hereinafter referred to as the cancer committee. (b) Three per cent to be paid to Augustus S. Rose upon his request, to be by him given to such tax exempt charitable institutions as he may determine, and upon his death the remaining corpus, if any, to go to the hospital and the cancer committee. (c) Two per cent outright to such of the children of Edwin B. Katte, brother of the testator's widow, as survive the testator. (d) One per cent outright to such of the children of the testator's brother William as survive the testator. (e) One per cent outright to such of the children of another brother, David, as survive the testator. (f) The remaining portion (68 per cent) outright to the testator's widow.

The proper interpretation of the language of the eighth article[1] determines the answers to the first group of questions, and of the thirteenth article[2] the

---

[1] "EIGHTH: Anything herein contained to the contrary notwithstanding, whenever, in the judgment of my trustees, the general welfare of my wife requires that she have additional funds, I direct that there be paid to my said wife, or applied for her benefit, from the corpus of the trust created for her under Article Seventh of this Will such amounts from time to time as my trustees in their absolute and uncontrolled discretion shall consider necessary. My said wife shall not participate in the exercise of such power and the judgment of those of my trustees who do participate therein shall be final and conclusive upon all persons interested or who may become interested in my estate. It is my desire that the power given under this Article of my Last Will and Testament be exercised in such a way that my said wife will be able to maintain herself in the manner to which she is accustomed at the time of my death."

[2] "THIRTEENTH: I direct that all inheritance, estate, transfer, succession, legacy and other taxes payable by reason of my death be paid out of my residuary estate regardless of whether the property with respect to which such taxes are payable be part of my testamentary estate."

answers to the second group of questions. The tenth, eleventh, twelfth and fourteenth articles are administrative rather than dispositive and endow the executors and trustees with broad powers. They, as well as article ninth, are not material to the determination of the issues before us.

The stipulation discloses that the estate was a large one and was so invested as to share in the general inflationary trend of the first seven years of the current decade. Thus the market value of the gross estate at the date of the execution of the will in 1950 was about $3,800,000; this had increased to approximately $6,100,000 by 1952, when the codicil was executed, and had further increased by the time of the testator's death in 1954, so that its estimated value, after taxes and administration expenses, would be over $8,000,000. Of this, the interest in the residue passing to the widow outright under subdivision (f) of article seventh would be close to $4,000,000, while the corpus of the 25 per cent trust established under subdivision (a), of which she is a life beneficiary, would amount to over $1,327,000. While these figures are inexact, it is obvious that the widow not only is given a very large sum of money outright but also the income from a trust corpus which, although smaller, is still very large. The stipulation describes the standard of living of the testator in considerable detail and indicates that his ordinary living expenses amounted to about $65,000 a year.

The will manifests much concern for the welfare of the testator's widow and makes bountiful provision for her. Under these circumstances, we think it clear that the invasion of the corpus provided for in article eighth can be to the extent necessary to provide not only for her general welfare but also for her maintenance in the manner to which she was ac-

customed at the time of the testator's death, and that the trustees are to follow, from time to time, whichever provision proves to be the more liberal. On the other hand, in considering whether any invasion of principal at all is warranted, we see nothing to obviate the operation of the general rule requiring that other resources of the beneficiary, both principal and income, must be substantially exhausted before any invasion of the corpus is authorized. *Hull* v. *Culver,* 34 Conn. 403, 405; *Hull* v. *Holloway,* 58 Conn. 210, 216, 20 A. 445; *Bridgeport-City Trust Co.* v. *Beach,* 119 Conn. 131, 137, 174 A. 308; *Stempel* v. *Middletown Trust Co.,* 127 Conn. 206, 220, 15 A.2d 305; *Bridgeport* v. *Reilly,* 133 Conn. 31, 37, 47 A.2d 865; see *Greenwich Trust Co.* v. *Converse,* 100 Conn. 15, 19, 122 A. 916.

The next set of questions has to do with the proration of state and federal taxes in the light of the provision in article thirteenth. No Connecticut estate taxes, as distinguished from succession taxes, are payable in connection with this estate. We think it too clear for discussion that all taxes on bequests and devises other than those dispositive of the residuum itself, that is, those made by article seventh of the will, are to be paid from the residuum before any division thereof. Consequently, there would and could be no proration of any such taxes among the beneficiaries of those bequests and devises.

This leaves only the question of the proration of taxes on the residuary gifts as such, namely, those in article seventh. This in turn depends upon the proper construction of the provisions of § 1159d of the 1955 Cumulative Supplement, commonly referred to as the proration statute. The situation is slightly complicated because one of these residuary gifts is in part for the benefit of the testator's widow,

and the beneficiaries of the other residuary gifts are in whole or in part exempt from taxation. The provisions of the proration statute are in part briefly summarized in two cases construing it. *Jerome* v. *Jerome*, 139 Conn. 285, 288, 93 A.2d 139; *New York Trust Co.* v. *Doubleday*, 144 Conn. 134, 140, 128 A.2d 192. Its meaning and effect are fully treated and explained in those two cases, and there is no need of reiterating or elaborating what was said therein. The proration statute is not, in essence, a taxing statute. Rather, it designates who shall bear the ultimate burden of a tax which must be paid. Its effect is that "[p]roration . . . is the rule, indeed, the mandate, to which exception is possible only if the testator clearly indicates" that there is to be no proration. *New York Trust Co.* v. *Doubleday*, supra, 141. Here, as already pointed out, the testator, as in the *Doubleday* case, supra, 137, clearly indicated that there was to be no proration as to taxes on the bequests and devises not made from the residuum. But, as was also true in the *Doubleday* case, supra, 141, the language employed was inadequate to show that the testator did not intend proration as to gifts made from the residuum. It follows that the proration statute does apply to the residuary gifts, all of which are contained in article seventh as amended by the codicil.

The statute requires that the proration "shall be made in the proportion, as near as may be, that the value of the property, interest or benefit of each such . . . [beneficiary whose gift is subject to proration] bears to the total value of the property, interests and benefits received by all such . . . [beneficiaries], except that in making such proration allowances shall be made for any exemptions granted by the act imposing the tax and for any deductions allowed by such act for the purpose of arriving at the value of

the net estate, and except that, in cases where a trust is created or other provision made whereby any person is given an interest in income or an estate for years or for life or other temporary interest in any property or fund, the tax on both such temporary interest and the remainder thereafter shall be charged against and paid out of the corpus of such property or fund without apportionment between remainders and temporary estates." The next to the last excepting clause in this quotation clearly requires that the full benefit of the so-called marital deduction provided in the federal estate tax be allowed as against the proportion of the residuum (68 per cent) which is given outright to the testator's widow. *New York Trust Co.* v. *Doubleday,* supra, 144. The same clause clearly requires that the gift of 3 per cent of the residuum in subsection (b) of article seventh, as amended by the codicil, and the gift of 25 per cent of the residuum in subdivision (a) of article seventh receive, respectively, the exclusive benefit of any charitable deductions allowable therefor.

Questions D(1), E, F, G, I(1), I(2) and I(3) are answered "Yes." Questions A, B, D(2), D(3) and H are answered "No." In view of the foregoing, questions C and J need not be, and are not, answered.

In this opinion the other judges concurred.