MORGAN GUARANTY TRUST COMPANY OF NEW YORK ET AL., EXECUTORS AND TRUSTEES (ESTATE OF ARCHER M. HUNTINGTON) *v.* ANNA H. HUNTINGTON ET AL.

KING, MURPHY, SHEA, ALCORN and HOUSE, Js.

Argued January 4—decided March 16, 1962

*Wendell Davis,* with whom were *Edward J. Butler* and *Thomas L. Cheney,* for the plaintiffs.

*David Goldstein,* with whom were *Irving J. Alter* and, on the brief, *Robert Fain,* for the defendants Anna H. Huntington et al., Trustees of the Hispanic Society of America.

*John W. Barnett,* for the defendants City Trust Company et al.; with him were *Howard J. Maxwell* and *W. Harmon Leete,* for the defendant State-Planters Bank of Commerce and Trusts, and *Henry S. Robinson, Jr.,* for the defendants Hartford National Bank and Trust Company et al.

*A. Searle Pinney,* with whom, on the brief, was *Burton F. Sherwood,* guardian ad litem, for the defendants John B. Warnken et al.

*Norman K. Parsells,* with whom was *Peter Wilkinson,* for the defendants National Academy of Design et al.

*G. Campbell Becket,* for the named defendant.

KING, J. Basically, this is an action for the construction of the will of Archer M. Huntington of

Redding, Connecticut, who died December 11, 1955. The plaintiffs are the executors and trustees under the will, which was dated February 24, 1941, and admitted to probate in Redding on December 20, 1955. Certain questions propounded in the action have been reserved for determination by us. The testator left no issue, but his widow, Anna Hyatt Huntington, one of the defendants herein, survived. She is a life beneficiary of the entire residue, which comprises a trust created under the seventh article of the will.

Certain property which formed no part of the estate passing under the will and is hereinafter referred to as nontestamentary property was required to be included in the estate for purposes of taxation under the laws relative to the Connecticut succession tax, the Connecticut estate tax, and the federal estate tax, commonly referred to, collectively, as death taxes. Rev. 1949, §§ 2021 (d), 2065 (as amended, General Statutes §§ 12-341 [d], 12-391); Cum Sup. 1955, § 1138d (General Statutes § 12-343); Int. Rev. Code of 1954, c. 11, §§ 2036–2041. This nontestamentary property included twenty-two inter vivos trusts which the testator had established from time to time; certain miscellaneous items of property, such as annuity policies and jointly owned real estate, aggregating about $250,000; and the principal of two New York trusts, hereinafter referred to as the Hanover trusts, which were created by the mother of the testator and over which he had general testamentary powers of appointment.

The eighth article of the will reads as follows: "I direct the payment by my executors from the capital of my residuary estate of any and all estate, transfer, succession or inheritance taxes which may be

levied upon my estate or any part thereof." Certain of the defendants claim that this provision suffices to require that the death taxes, amounting to about one and one-fifth million dollars, imposed with respect to the nontestamentary property should be paid from the capital of the residuary estate. The validity of this claim, with respect to the state and federal estate taxes, is governed by the provisions of the proration statute, § 1159d of the 1955 Cumulative Supplement (now General Statutes § 12-401). The validity of the claim with respect to the Connecticut succession tax is governed by the provisions of § 2052 of the 1949 Revision (now General Statutes § 12-376). *Riggs* v. *Del Drago,* 317 U.S. 95, 97, 63 S. Ct. 109, 87 L. Ed. 106. The operative effect, in this respect, of both statutes is substantially the same. *McLaughlin* v. *Green,* 136 Conn. 138, 141, 69 A.2d 289. For convenience, they will be referred to as the proration statutes. Taken together, their effect is that, as to all death taxes, " '[p]roration . . . is the rule, indeed, the mandate, to which exception is possible only if the testator clearly indicates' that there is to be no proration." *Guaranty Trust Co.* v. *New York City Cancer Committee,* 145 Conn. 542, 548, 144 A.2d 535.

The reference in the eighth article of the will to death taxes "upon my estate or any part thereof" falls short of being a clear direction that the proration statutes should not apply to the death taxes attributable to the nontestamentary property. Consequently, the proration statutes are applicable, and the ultimate burden of all death taxes attributable to the nontestamentary property should fall on the recipients of that property and not on the estate. *McLaughlin* v. *Green,* supra, 144. It follows that question (a) should be answered "Yes."

The federal estate tax imposed on a decedent's estate must be paid by the executor. Int. Rev. Code of 1954, c. 11, § 2002. The statute, by its terms, entitles him to recover from beneficiaries of life insurance policies and recipients of property under powers of appointment their proportionate share of the federal estate tax paid on a gross estate which included the insurance proceeds and the property appointed. Id. §§ 2206, 2207. The apportionment of federal estate taxes with respect to other inter vivos transactions which are required to be included in the decedent's gross estate for federal estate tax purposes is left to state law. *Riggs* v. *Del Drago,* supra. Where that law requires apportionment, the executor is entitled to recover from a beneficiary of an inter vivos transaction his proportionate share of the death taxes, state or federal. *Bragdon* v. *Worthley,* 155 Me. 284, 299, 153 A.2d 627; *Gaede* v. *Carroll,* 114 N.J. Eq. 524, 533, 169 A. 172. The executors here should take appropriate steps to recover from the recipients of the nontestamentary property included in the testator's gross estate for state or federal death tax purposes their proportionate shares of all death taxes which the executors have been compelled to pay. Consequently, question (b) should be answered "Yes."

Certain of the defendants claim that, in any event, the eighth article of the will is sufficient to prevent the proration statutes from applying to the residuary provisions of the will. The eighth article is not inoperative. It is effective to provide for the payment, from the residue, of death taxes chargeable to the nonresiduary dispositions in the earlier articles of the will insofar as these dispositions are taxable. That the amount of such taxes was rela-

tively small does not render the eighth article useless. The testator's instruction that the taxes should be paid "from the capital of my residuary estate" cannot be considered as a clear directive against the prorating of the taxes in question among the residuary gifts. *New York Trust Co.* v. *Doubleday,* 144 Conn. 134, 142, 128 A.2d 192. Proration under the statutes is ordinarily the fairer method. If a testator does not wish such proration, it is a simple matter for him to provide that the proration statutes shall not be applicable, either to the entire property subject to tax or to certain clearly designated portions of it. No such clear language was used here, and it follows that the proration statutes are applicable to the gifts within the residuary clause. Question (c) should be answered "No."

The method of proration as to the residuary clause, including the proper treatment and application of any marital or charitable deduction, is prescribed by statute and more fully explained in *Guaranty Trust Co.* v. *New York City Cancer Committee,* 145 Conn. 542, 549, 144 A.2d 535. Question (d) should be answered "Yes."

Certain of the defendants make what amounts to a collateral attack on a portion of a New York judgment determining the effectiveness of the testator's exercise, in his will, of testamentary powers of appointment conferred on him by the instruments creating the Hanover trusts. These trusts were created during the years 1897 to 1901 by Arabella D. Huntington, the testator's mother, by agreements with a predecessor of the Hanover Bank. The agreements provided that the trust income be paid to the testator during his life and, on his death, the principal be paid and delivered to such persons or parties as he should by his last will and testa-

ment direct. In other words, general testamentary powers of appointment were conferred on the testator. The agreements were made in New York, and the trusts were administered in that state and under its laws by a New York trustee, now the Hanover Bank. The domicil of Arabella D. Huntington at the date of the creation of the trusts does not appear.

Article seventh of the will creates a trust of the entire residue, which constitutes the bulk of the testamentary estate. The entire trust income is to be paid to the widow during her lifetime; at her death, the trust corpus is ordered divided into eight equal parts. The provisions for but one of these, the eighth, need be outlined. It is ordered subdivided into three shares: one share for the issue, collectively, of the testator's maternal aunt, Emma Warnken; a second share for the issue, collectively, of John D. Yarrington; and the third share for the issue, collectively, of Richard M. Yarrington. In each instance the "issue" is limited to those born during the testator's lifetime and living at his widow's death. Each share is ordered further subdivided, per capita, and each subdivided share is ordered held in trust for the qualifying beneficiary, the income from it to be paid him for life. After the death of any such beneficiary, the income from his per capita share is to be paid, in perpetuity, to the trustees of the Hispanic Society of America, hereinafter referred to as Hispanic, who ultimately will receive, in perpetuity, the income of seven of the eight parts of the residue. For convenience, we follow counsel in referring to the three classes of issue taking life estates under the eighth part of the residue as "cousins" of the testator.

Following the death of the testator, the Hanover

Bank instituted proceedings in the Supreme Court
of New York for allowance of the final accounts of
the bank as trustee of the Hanover trusts and for
directions as to the person or persons to whom the
principal of those trusts should be paid or trans-
ferred, citing, as parties, the executors and trustees
under the testator's will and the beneficiaries of his
residuary estate. The New York court held, pre-
sumably by virtue of a New York statute (N.Y.
Pers. Prop. § 18), that the testator by his will ex-
ercised his powers of appointment; but, presum-
ably because of a violation of the New York Statute
against Perpetuities (N.Y. Pers. Prop. § 11), the
court also held that the exercise of the powers was
in part invalid. *Matter of Hanover Bank (Hunt-
ington),* 139 N.Y.L.J. No. 67, p. 4, col. 6 (Sup. Ct.
Apr. 7, 1958) (two cases); *Matter of Hanover Bank
(Huntington),* 140 N.Y.L.J. No. 116, p. 11, col. 5
(Sup. Ct. Dec. 17, 1958) (motion for reargument);
see *Low* v. *Bankers Trust Co.,* 270 N.Y. 143, 148,
200 N.E. 674. This invalidity extended only to the
life estates given the cousins after the death of the
widow and, of course, only to the extent that those
life estates looked to the assets of the Hanover
trusts. The New York court ordered that the princi-
pal and income of the Hanover trusts, after pay-
ment of expenses, should be paid over to the trus-
tees under the testator's will, but that the life in-
terests of the cousins, insofar as these Hanover
assets are concerned, should be excised and the re-
mainder interests accelerated. *Matter of Hanover
Bank (Huntington),* N.Y. Sup. Ct., Spec. Term, Pt.
I, N.Y. County, Nos. 7867-1957, 7869-1957 (Dec. 31,
1958). The court expressly refused to pass on the
question whether this was a proper case for mar-
shaling; it correctly held that the determination of

that question lay with the courts of Connecticut. There being no appeal from the New York decision, it became final, and, pursuant to it, the balance of the principal and income of the Hanover trusts was transferred to the trustees under the testator's will.

The cousins urge us to hold that New York exhausted its jurisdiction in deciding that the powers of appointment had been exercised, and that it had no further jurisdiction to hold that there was any invalidity in the testamentary provisions made for the cousins. It is true that the validity of a testamentary trust of personalty is ordinarily determined by the law of the domicil of the testator at the time of his death, in this case Connecticut. *Cross v. United States Trust Co.,* 131 N.Y. 330, 348, 30 N.E. 125; Restatement, Conflict of Laws § 295; 11 Am. Jur. 382, § 95. The New York judgment, however, did not determine, or attempt to determine, the proper interpretation of the will, as a will, or the validity of the residuary trust created in it. That determination was left to Connecticut. New York determined, under its law, (a) the formal validity of the will as an instrument for exercising the powers of appointment, (b) the efficacy of the provisions of the will for exercising those powers, and (c) the essential validity of the appointments. See note, 150 A.L.R. 519, 520. Only the last point is called into question, that is, the determination of the essential validity, or effectiveness, of the testator's exercise, in his will, of the testamentary powers of appointment conferred by the instruments creating the Hanover trusts. See *Matter of Deane,* 4 N.Y.2d 326, 331, 151 N.E.2d 184; note, 150 A.L.R. 519, 543.

The New York decision is expressly limited to the Hanover assets, all of which were in New York and administered there. The power of the New York

court to adjudicate rights in these assets was not lost merely by its holding that the testator's will exercised his powers of appointment. Although the exercise of the powers took place in Connecticut, the property on which the powers were to operate, that is, the trust res, was situated in New York. On proper notice to the persons affected, even though they were nonresidents, New York had jurisdiction to adjudicate the rights in this trust res. *Wehrhane* v. *Peyton,* 134 Conn. 486, 497, 58 A.2d 698, and cases cited therein; 30A Am. Jur. 185, § 130. Furthermore, all the parties to the present action appeared generally in the New York action and were represented by counsel. They thereby submitted themselves to the in personam jurisdiction of the New York court. *Beardsley* v. *Beardsley,* 144 Conn. 725, 730, 137 A.2d 752; *Samson* v. *Bergin,* 138 Conn. 306, 310, 84 A.2d 273. Since the New York court had jurisdiction of the trust res and, indeed, these parties, its judgment—from which no appeal was taken —determining the essential validity and extent of the exercise of the powers of appointment is, even if it is erroneous, which we nowise intimate, conclusive, binding on the parties and entitled to full faith and credit in the courts of Connecticut. *Rathkopf* v. *Pearson,* 148 Conn. 260, 265, 170 A.2d 135; *Milliken* v. *Meyer,* 311 U.S. 457, 462, 61 S. Ct. 339, 85 L. Ed. 278; Restatement, Conflict of Laws § 431; 2 Beale, Conflict of Laws § 431.1, p. 1372; 30A Am. Jur. 316, § 249. The New York judgment is not open to a collateral attack such as is here attempted. *Hall* v. *Hall,* 91 Conn. 514, 521, 100 A. 441. The answer to question (e) should be "Yes."

The next question raised is whether the doctrine of marshaling, or selective allocation, should be applied to the assets now in the hands of the trustees

under the will; that is, whether they should allocate the assets from the Hanover trusts to the first seven parts of the residuary trust, so that none of the Hanover assets would fall into the eighth part, and then allocate to the eighth part so much of the non-Hanover assets as would provide a full part, equal in value to each of the other seven parts. The purpose, of course, would be to avoid the effect of the invalidity, under the New York Statute against Perpetuities, of so much of the life estates of the cousins as looked to the Hanover assets. Connecticut has thus far applied the doctrine of marshaling only to the rights of creditors in funds of their debtors. *Greenwich Trust Co.* v. *Tyson,* 129 Conn. 211, 227, 27 A.2d 166; *Quinnipiac Brewing Co.* v. *Fitzgibbons,* 73 Conn. 191, 196, 47 A. 128. The application of the doctrine to powers of appointment has been largely confined to Massachusetts and New York. 72 C.J.S. 462; Hoffman, "Powers of Appointment and Selective Allocation," 46 Cornell L.Q. 416, 430. In these jurisdictions, the doctrine has been invoked to avoid, or ameliorate the effect of, an invalidity arising from a violation of the rule against perpetuities, whether statutory or common law. See Hoffman, op. cit., 434. The doctrine, when so applied, is a rule of testamentary construction. It is invoked to carry out the intent of the testator, the donee of the power of appointment, where that intent is thwarted by the application of a rule against perpetuities. *Minot* v. *Paine,* 230 Mass. 514, 525, 120 N.E. 167; *Low* v. *Bankers Trust Co.,* 270 N.Y. 143, 149, 200 N.E. 674; Restatement, 3 Property § 363; Simes & Smith, Future Interests (2d Ed.) § 975, p. 440. Selective allocation is but an equitable application of the well-established principle that the expressed intent of the testator will

govern, if not contrary to some positive rule of law. *Reaney* v. *Wall,* 134 Conn. 663, 666, 60 A.2d 505; *Bridgeport-City Trust Co.* v. *Leeds,* 134 Conn. 133, 136, 55 A.2d 869; *Minot* v. *Paine,* supra.

The doctrine proceeds on the theory that when a donee of a general testamentary power of appointment exercises that power in his will, but without specific direction as to the allocation of the assets derived from the exercise of the power, he expresses an intent to, and does, blend those assets with the assets of his estate into a single fund. If, by so doing, he violates the applicable rule against perpetuities, the appointive assets are, where it is possible, allocated to the various dispositions in the will in such a manner as to avoid the result of the violation and give full effect to all the dispositions as the donee-testator intended. *Amerige* v. *Attorney General,* 324 Mass. 648, 661, 88 N.E.2d 126; *Minot* v. *Paine,* supra; *Fargo* v. *Squiers,* 154 N.Y. 250, 261, 48 N.E. 509; Restatement, 3 Property § 363, comment b.

On the facts before us, however, the doctrine should not be applied. Indeed, we doubt if the New York Court of Appeals would have ordered marshaling had it had jurisdiction of the testamentary estate. *Low* v. *Bankers Trust Co.,* supra, 150. The doctrine does not apply unless the testator intended to blend the appointive assets with his own. Necessarily, such an intent cannot exist unless he intended to exercise his power of appointment. In many, if not most, of the cases similar to this where the doctrine was applied, the donee-testator exercised the power of appointment by express language in his will, so that there was no question of his intention. This was the case, for instance, in *Fargo* v. *Squiers,* supra (principally relied on by the defend-

ants seeking an order for marshaling); in *In re Morse's Estate,* 80 N.Y.S.2d 541, 542 (Surr. Ct.); and in *In re Fuller's Will,* 131 N.Y.S.2d 402, 405 (Surr. Ct.). The donee-testator, by so doing, expressed his intent not only to exercise the power of appointment but also, in the absence of a testamentary provision as to allocation, to blend the appointive property with his own personal estate. *In re Morse's Estate,* supra, and cases cited therein. In the present case, the testator did not express in his will an intent to exercise his powers of appointment. The New York Supreme Court, presumably applying § 18 of the New York Personal Property Law, held that the testator had exercised the powers of appointment in his will. This was because this New York statute provides that a donee-testator whose will purports to dispose of all of his property is held to have exercised any power of appointment conferred on him, unless the will expresses or implies an intent to the contrary. See *Hollister* v. *Shaw,* 46 Conn. 248, 254; *Matter of Deane,* 4 N.Y.2d 326, 330, 151 N.E.2d 184; *Low* v. *Bankers Trust Co.,* 270 N.Y. 143, 147, 200 N.E. 674; *Lockwood* v. *Mildeberger,* 159 N.Y. 181, 187, 53 N.E. 803.

In Connecticut, however, the common-law rule applies, as it did in New York prior to the enactment of the statute. See *White* v. *Hicks,* 33 N.Y. 383, 388. Under this rule, a testator will not be considered as having executed or having intended to execute a testamentary power of appointment unless the will contains "a reference to the power itself or to the subject of it, [or] unless the intention to execute [the power] is manifest from the fact that the will would remain inoperative without the aid of the power, or is so clearly demonstrated by words or acts . . . that the transaction is not fairly suscep-

tible of any other interpretation." *Hollister* v. *Shaw*, supra, 252; *Union & New Haven Trust Co.* v. *Bartlett*, 99 Conn. 245, 252, 122 A. 105; *Hartford-Connecticut Trust Co.* v. *Thayer*, 105 Conn. 57, 69, 134 A. 155. Our rule appears to be in accord with the modern general rule as stated in an annotation in 127 A.L.R. 248 at 249. See also notes, 91 A.L.R. 433, 94 A.L.R. 26, 173.

We have conceded the power of New York, in this case, to determine the extent to which the general testamentary powers of appointment conferred by the Hanover trusts were effectively exercised by the testator's will. The question of the existence of the requisite intent for the application of the doctrine of marshaling or selective allocation is an entirely different matter and must be determined by the proper interpretation and construction of the testator's will. This is governed by the law of Connecticut. Furthermore, marshaling is impossible without the use of testamentary assets, and these, of course, are in the sole jurisdiction of Connecticut. For both reasons, New York correctly left the question of marshaling to Connecticut.

There is nothing in the will suggestive of an intention to exercise the Hanover powers of appointment. To paraphrase: "We can read this will from beginning to end without receiving a suggestion or intimation that the testator had [powers] . . . of appointment under the [Hanover trusts] . . . . The will does not indicate that he even had the [powers] . . . of appointment in mind or that he actually or in fact intended to exercise the [powers] . . . of appointment. It is section 18 of the Personal Property Law [of New York], read into this will, which makes it obligatory upon the courts to consider the passing of all personal property as includ-

ing the [Hanover powers] . . . of appointment. This section, however, does not prevent us from seeking the testator's intention as to other matters from the reading of his will, having in mind the situation and condition of his property." *Low* v. *Bankers Trust Co.,* 270 N.Y. 143, 150, 200 N.E. 674.

The Hanover assets are not necessary for the effective operation of the will, since without resort to them the residuary clause makes bountiful provision for its beneficiaries. There are no extrinsic facts indicative of any intention to exercise the powers of appointment. The stipulation does not disclose the precise terms of the Hanover trusts or who the takers would be if the powers of appointment had not been exercised. It is not true that every testator wishes to exercise any and all powers of appointment conferred on him. In this very case, the testator's widow has renounced a power of appointment conferred on her with regard to the sixth part of the residuary trust, presumably because she wishes the property to go to Hispanic, named as the default taker. Because of tax considerations (see Int. Rev. Code of 1954, § 2041) or because he wishes the property to go to the default takers, a testator may prefer not to exercise a testamentary power of appointment. Simes & Smith, Future Interests (2d Ed.) § 988, p. 484. A general residuary clause does express an intention to dispose of a testator's entire estate and avoid any intestacy. *Ministers Benefit Board* v. *Meriden Trust Co.,* 139 Conn. 435, 447, 94 A.2d 917. It does not, however, express an intention to exercise a power of appointment. Such a power operates on property forming no part of the estate of the donee, and therefore his nonexercise of the power cannot result in any intestacy in his estate. *Bankers Trust Co.* v.

*Variell,* 143 Conn. 524, 528, 123 A.2d 874. This is one of the reasons for the common-law rule long in effect in Connecticut, as opposed to the contrary rule which Massachusetts has evolved in its case law and New York has adopted by statute. See *Hollister* v. *Shaw,* 46 Conn. 248, 255. Both on principle and authority we consider ours the better rule. The assets of the Hanover trusts are contained in the testator's residuary trust by virtue of the application to these assets of § 18 of the New York Personal Property Law, not because of any ascertainable intention on the part of the testator in his Connecticut will. In applying the doctrine of marshaling, equity attempts to carry out the presumed intent of the testator in his will. Absent that intent, which is the case here under controlling Connecticut law, there is no equitable ground for marshaling. *Amerige* v. *Attorney General,* 324 Mass. 648, 661, 88 N.E.2d 126. The answer to question (f) should be "No."

It follows that in the eighth part of the residuary trust, as far as the assets of the Hanover trusts are concerned, the life interests of the cousins are excised and the remainder interest of Hispanic accelerated so as to become effective on the death of the widow. Subject to the qualifications and limitations in the orders of the New York court, the assets of the Hanover trusts become a part of the residuary trust and are to be utilized accordingly. The answer to question (g) should be "Yes."

The next issue involves the administration of the assets of the Hanover trusts. Pursuant to the orders of the Supreme Court of New York, these assets have been paid over to the trustees of the residuary trust. These trustees are accountable to the Redding Probate Court for the Hanover assets,

as they are for all other assets of their trust. General Statutes § 45-267. The answer to question (h) should be "Yes."

The next question is whether the administration of the assets from the Hanover trusts is to be governed by the laws of Connecticut. Since these assets have become a part of the testator's residuary trust, and the will indicates no intention that this trust or any of its subdivisions should be administered under the law of any other jurisdiction, the usual rule applies, and the trust should be administered according to the law of the testator's domicil at the time of his death, that is, Connecticut. *United States Trust Co.* v. *Boshkoff*, 148 Me. 134, 141, 90 A.2d 713; *In re Johnston*, 127 N.J. Eq. 576, 582, 14 A.2d 469, aff'd, 129 N.J. Eq. 104, 18 A.2d 274; *Lozier* v. *Lozier*, 99 Ohio St. 254, 256, 124 N.E. 167; Restatement, Conflict of Laws § 298. The answer to question (i) should be "Yes"; no answer is required to question (j).

Although the assets of the Hanover trusts have become a part of the testator's residuary trust by the force of the orders of the New York court, it appears that proper administration would require that these assets be kept segregated from the other assets in the residuary trust in order that upon the death of the testator's widow the remainder interest in one-eighth of the Hanover assets may be accelerated in accordance with the terms of the New York orders. Thus, the answer to question (k) should be "Yes."

Certain questions have arisen as to the provisions for investment as set forth in the will. In article ninth, the testator provided: "My executors and/or trustees are authorized to retain any investments held by me at the time of my decease but one-half of

all future investments shall, if practicable, be in United States Government bonds." In article seventh, he provided that the residuary trust fund, upon its division into eight parts at the death of his widow, should "be invested and reinvested when and where possible in Government of the United States bonds or other sound securities." It is apparent that the provision in article ninth is the general one, applicable to the investments of the executors and trustees except as otherwise provided. It is otherwise provided only in the case of the eight parts of the residuary trust, which are first established upon the death of the widow and with which the trustees, but not the executors, are concerned. As to these parts, only, the investment provision of the seventh article applies.

There is an obvious difference in the language of the two provisions. The general provision in article ninth adopts, in effect, the permission for the retention of investments accorded by § 45-89 of the General Statutes, and further requires that whenever any new investment is made, one-half, if practicable, shall be in government bonds. It is inconceivable that during the lifetime of the widow there will be any difficulty in purchasing government bonds. It is equally inconceivable that any other investment could furnish greater safety. On the other hand, it would be impossible to carry out the terms of the provision in article ninth to the letter, since government bonds would almost certainly not be available in such denominations, and at such prices, as would permit the investment in them of exactly one-half of the amount of any new investments. This the testator must have foreseen, and for this reason, if for no other, some such qualification as "if practicable" was required. *Gilmartin* v. *D. & N. Trans-*

*portation Co.,* 123 Conn. 127, 133, 193 A. 726. The effect of the provision in article ninth is to require that up until the death of the widow substantially one-half of any funds reinvested at any time should be in government bonds. The other half of each reinvestment, up until that date, is left to be governed by the provisions of § 45-88 of the General Statutes regarding the investment of trust funds.

The provision in article seventh allows the trustees, in any reinvestments, the choice of either government bonds or other sound securities. A question arises as to the meaning of the word "sound." "Sound securities" are securities authorized for investment by trustees by § 45-88 of the General Statutes. See Locke, "Care and Handling of Estates," 24 Conn. B.J. 414, 416, 422. The answer to question (1) should be "Yes, but only to the extent stated in this opinion"; the answer to question (n) should be "Only to the period prior to the death of Anna Hyatt Huntington"; question (m) need not be answered.

To questions (a), (b), (d), (e), (g), (h), (i) and (k) in the reservation we answer "Yes"; to questions (c) and (f) we answer "No"; to question (l) we answer "Yes, but only to the extent stated in this opinion"; and to question (n) we answer "Only to the period prior to the death of Anna Hyatt Huntington"; questions (j) and (m) need not be answered.

In this opinion the other judges concurred.